CC-1997-313                                                    1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| María G. Chévere, etc.<br>      Peticionaria<br><br>      v.<br><br>Salomón Levis Goldstein<br>      Recurrido | Certiorari<br><br>2000 TSPR 42 |

Número del Caso: CC-1997-0313

Fecha: 03/15/2000

Tribunal de Circuito de Apelaciones: Circuito Regional I

Juez Ponente: Hon. Yvonne Feliciano

Abogados de la Parte Peticionaria: Lcda. Maritza Miranda López
                                   Lcdo. Arturo Hernández González

Abogados de la Parte Recurrida: Lcda. Sylvia Vilanova Hernández
                                Lcdo. Harold D. Vicente
                                Lcda. Olga García Vicenty

Materia: Alimentos y Filiación

    Este documento constituye un documento oficial del Tribunal
    Supremo que está sujeto a los cambios y correciones del
    proceso de compilación y publicación oficial de las
    decisiones del Tribunal. Su distribución electrónica se hace
    como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

María G. Chévere, etc.

    Peticionaria


      v.                                    CC-97-313


Salomón Levis Goldstein

    Recurrido


Opinión del Tribunal emitida por la Juez Asociada SEÑORA NAVEIRA DE RODÓN


San Juan, Puerto Rico, a 15 de marzo de 2000

Nos toca resolver si en circunstancias en las cuales el padre no custodio acepta tener capacidad económica para proveer una pensión alimentaria a base de las necesidades razonables de sus hijos –**criterio básico para determinar la obligación alimentaria**– tiene éste aún el deber de informar sus ingresos conforme dispone la Ley Orgánica de la Administración para el Sustento de Menores, Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, 8 L.P.R.A. sec. 501 <u>et seq.</u> (en adelante Ley de Sustento de Menores).

Además, aclaramos que, el padre alimentante puede ejercer la patria potestad respecto a aquellos hijos menores que no viven en su compañía.

Para ubicarnos en justa perspectiva, hacemos un recuento del trasfondo fáctico que dio lugar al asunto que hoy nos ocupa.

I

La Sra. María Georgina Chévere Mouriño (en adelante señora Chévere) y el Sr. Salomón Levis Goldstein (en adelante señor Levis) son los padres de los menores María de los Ángeles y Salomón. Las partes nunca han estado casados entre sí y ambos menores se encuentran bajo la custodia de la madre. La niña María de los Ángeles nació el 16 de agosto de 1994 en el Estado de Florida y fue reconocida e inscrita voluntariamente por el señor Levis. Surge del Informe del Oficial Examinador de 17 de julio de 1997 que las aportaciones de éste para el sustento de la menor fluctuaban desde un mínimo de cinco mil dólares ($5,000) hasta un máximo de treinta mil dólares ($30,000) mensuales.

El 11 de marzo de 1996 nació en Puerto Rico el menor Salomón. A pesar que el señor Levis se negó a reconocerlo inmediatamente, continuó aportando entre diez mil ($10,000) y quince mil dólares mensuales ($15,000) para el sostenimiento de ambos niños. Véase, Informe de Oficial Examinador, supra.

La resistencia del señor Levis a reconocer al niño motivó a que en octubre de 1996 la señora Chévere presentara una acción de alimentos y filiación ante el Tribunal de Primera de Instancia, Sala Superior de San Juan. En ella solicitó que se le ordenara a este último a reconocer al niño o, en su defecto, que ambas partes se sometieran a las pruebas de determinación de paternidad. Respecto a los alimentos, indicó que el señor Levis aportaba alrededor de diez mil dólares ($10,000) para el beneficio de ambos menores. En consecuencia, le requirió al tribunal que le concediera a éstos dicha suma como pensión

alimentaria.[1]

Posteriormente, la señora Chévere le cursó al señor Levis un aviso de toma de deposición (ad testificandum y duces tecum) dirigido a descubrir su capacidad económica y estilo de vida a los fines de fijar la pensión alimentaria para sus hijos menores.

En respuesta, el señor Levis, mediante "Solicitud de Orden Protectora Bajo la Regla 23.2 de Procedimiento Civil", solicitó que se le eximiera de cumplir con el requerimiento de información que se le había cursado, ya que él había admitido tener capacidad económica suficiente para satisfacer la pensión alimentaria que en su día se determinara.[2] Señaló que, en vista de su admisión, el único asunto a resolver era la cuantía de la pensión alimentaria, según la necesidad de los menores y la capacidad económica de la madre. La señora Chévere se opuso a lo solicitado.

Así pues, y luego de varios trámites procesales, el 13 de febrero de 1997, el tribunal de instancia declaró sin lugar la orden de protección al amparo de la Regla 23.2, supra, solicitada por el señor Levis. En consecuencia, le ordenó que indicara cuáles eran las preguntas específicas del interrogatorio que objetaba en cuanto al aviso de toma de deposición.

De otra parte, el 21 de febrero de 1997, el señor Levis presentó

---

[1] El 2 de junio de 1997, luego de realizadas las pruebas de paternidad, el señor Levis reconoció al menor Salomón. Así lo hizo constar el Tribunal de Primera Instancia, Sala Superior de San Juan, mediante Resolución de 9 de junio de 1997. Resuelta la controversia de la filiación, quedó pendiente lo relacionado a la pensión alimentaria.

Conforme surge de la petición de certiorari presentada por la señora Chévere, para el mes de octubre de 1996, el señor Levis aportaba la suma de diez mil dólares ($10,000). Señaló que, a partir de diciembre de 1996 y a raíz de la acción de alimentos, éste redujo unilateralmente el pago de pensión alimentaria de ($10,000) a la suma de dos mil quinientos dólares ($2,500).

[2] Surge de la "Solicitud de Orden Protectora bajo la Regla 23.2 de Procedimiento Civil" que desde el 24 de diciembre de 1996, el señor Levis, en un escrito titulado "Moción en Relación a Solicitud Urgente de Determinación de Pensión Alimentaria Provisional", así como mediante Moción en Virtud de la Regla 23.2 de Procedimiento Civil de igual fecha, había aceptado que tenía capacidad económica para pagar una pensión alimentaria razonable.

ante el foro de instancia copia de su Planilla de Información Personal y Económica (en adelante planilla). En ésta indicó que es banquero hipotecario y que su patrono es el First Financial Caribbean Corp. En el renglón V, apartado A-3, sobre salario mensual, el señor Levis se limitó a informar que "se admite capacidad económica". De igual forma lo hizo en el apartado B, sobre gastos mensuales. En los apartados C, sobre capital, y D, sobre pasivos u obligaciones, no ofreció información alguna.

El 25 de febrero, el foro de instancia dictó otra orden en la que determinó que la información contenida en la planilla del señor Levis era inaceptable. En consecuencia, le concedió un término improrrogable de cinco (5) días para que la cumplimentara debidamente. Es decir, debía indicar todos sus ingresos, fuentes de ingresos y gastos. Le advirtió, además, que el incumplimiento con lo ordenado acarrearía la imposición de sanciones económicas.

El señor Levis acudió entonces al Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito) mediante recurso de certiorari. Dicho tribunal revocó las dos (2) órdenes emitidas por el foro de instancia. Resolvió que "... habiendo aceptado el señor Levis su capacidad económica para proveer pensión alimenticia [sic], se torna académico el tener que llenar la planilla de información personal y económica." En consecuencia, declaró con lugar la orden protectora a favor del señor Levis.

Inconforme con dicha determinación, la señora Chévere acudió ante nos con los siguientes señalamientos.

> Erró el Honorable Tribunal de Circuito de Apelaciones al determinar que el Tribunal de Primera Instancia debió haber emitido la orden protectora a favor del recurrido, Sr. Levis, toda vez que el aviso de toma de deposición y requerimiento que se le cursó "no está relacionado con el caso de alimentos ni con el caso de filiación. Erró además al concluir que el descubrimiento causa perturbación y opresión al tener que proveer información que no está relacionada con el caso de marras."

> Erró el Honorable Tribunal de Circuito de Apelaciones al determinar que "habiendo aceptado el señor Levis su

capacidad económica para proveer pensión alimenticia [sic], se torna académico el tener que llenar la planilla de información personal y económica".

Mediante Resolución de 18 de junio de 1997, expedimos el auto y, con el beneficio de la comparecencia de ambas partes, resolvemos sin ulteriores procedimientos.

Antes de comenzar nuestro análisis, pasemos a refrescar los preceptos generales en el campo del derecho de familia que hoy gobiernan los casos de pensión alimentaria.

II

La Carta de Derechos de la Constitución de Puerto Rico establece el derecho a la vida como principio fundamental del ser humano.  Art. II, Sec. 7 de la Constitución del Estado Libre Asociado, L.P.R.A., Tomo I.  A la luz de este precepto constitucional se manifiesta la obligación de todo progenitor de proveer alimentos a sus hijos. Rodríguez Avilés v. Rodríguez Beruff, 117 D.P.R. 616, 621 (1986).  Los cimientos de tal obligación se fundamentan, por un lado, en la relación consanguínea existente entre el alimentante y alimentista, por otro lado, en sentimientos de alta jerarquía espiritual, como son el amor, el afecto y el cariño.  Véase S. Torres Peralta, La nueva ley especial de sustento de menores y el derecho a pensión alimenticia, 49 (Núms. 3-4) Rev. C. Abo. P.R. 17, 19 (1963).  Así, pues, el deber de alimentar **"se funda en principios universalmente reconocidos de solidaridad humana, generados por el derecho natural de la vida e imperativos de los vínculos familiares"**.  (Énfasis nuestro.)  Mártínez v. Rivera Hernández, 116 D.P.R. 164, 168 (1985).  Véase, también, Milán v. Muñoz, 110 D.P.R. 610, 612- 614 (1981).[3]

---

[3]   F. Puig Peña, en su obra Compendio de Derecho Civil Español, 3ra ed. rev., Madrid, Eds. Pirámide S.A., 1976, T. V, pág. 494-499, define las características de la obligación alimentaria como: (i) una estrictamente personal, lo que la hace irrenunciable e intransmisible; (ii) constituye una excepción al principio de la insensibilidad (es decir, se paga por adelantado y al fallecer el alimentista; los

Según el Art. 147 del Código Civil, enmendado, 31 L.P.R.A. sec. 566 (Supp. 1998), los alimentos se deben desde el momento en que se presenta la demanda.[4] La cuantía de dicha obligación está supeditada a los recursos del alimentante y a las necesidades del alimentista.[5] Art. 146 del Código Civil, 31 L.P.R.A. sec. 565. Véanse, también: Galarza Rivera v. Mercado Pagán, Op. de 19 de diciembre de 1995, 139 D.P.R.___ (1995) 95 JTS 164, pág. 419; y Rodríguez Avilés v. Rodríguez Beruff, supra.

Respecto a los menores de edad, el derecho de éstos a recibir alimento de sus padres es parte esencial del principio natural de conservación que, como hemos dicho, constituye piedra angular del derecho constitucional a la vida. Const. E.L.A., supra. Véase, además, Rivera Maldonado v. Cabrera Olivera, 130 D.P.R. 39, 41 (1992). Es un derecho de tan alto interés público que el Estado, como parte de su política pública, ha legislado ampliamente para velar por su cumplimiento. Rodríguez Amadeo v. Santiago Torres, 133 D.P.R. 785, 792 (1993); López v. Rodríguez, 121 D.P.R. 23, 28 (1988); Negrón Rivera y

---

herederos no tienen la obligación de devolver lo que ya se hubiese devengado por adelantado el alimentista que fallece); (iii) es inembargable y no es susceptible de retención por compensación; (iv) la reciprocidad de las prestaciones, y (v) es mancomunada y divisible.

[4] El Art. 142 del Código Civil, 31 L.P.R.A. sec. 561 dispone que el concepto alimentos incluye "todo lo que es indispensable para el sustento, habitación, vestido y asistencia médica según la posición social de la familia". Por vía jurisprudencial, hemos añadido los honorarios de abogado de los menores en una acción para reclamar alimentos, sin la necesidad de que el demandado incurra en temeridad al defenderse de la reclamación. Guadalupe Viera, 115 D.P.R. 4, 14 (1983) y casos allí citados. Respecto a la educación e instrucción, aunque el Código Civil las ha limitado a la minoridad del alimentista, a través de nuestra jurisprudencia hemos establecido que el deber legal de los padres de proveer los medios económicos necesarios para la educación de un hijo -proporcional a los recursos del que los da y la necesidad de quien los recibe- no cesa, sin más, porque el hijo alcance la mayoría de edad. Key Nieves v. Oyola Nieves, 116 D.P.R. 261, 265 (1985). Véase, también, Rodríguez Amadeo v. Santiago Torres, 133 D.P.R. 785, 793 (1993).

[5] El Art. 2, incisos (4) y (5), de la Ley para el Sustento de Menores, supra, define el término "alimentante" como aquella persona que, en virtud de las leyes aplicables, tiene la obligación de proveer alimentos. "Alimentista", por su parte, es aquella persona que, en virtud de las leyes aplicables, tiene el derecho a recibir alimentos. 8 L.P.R.A. sec. 501(4) y (5).

Bonilla, Ex parte, 120 D.P.R. 61, 72 (1987); y Rodríguez Avilés v.

Rodríguez Beruff, supra, pág. 621. Véase, también, I. López Palau, La

pensión alimentaria de los hijos en Puerto Rico, Eds. Lago, 1998, pág.

35, 1ra ed.

A través de nuestra jurisprudencia hemos expresado que la

obligación de los padres de proveer alimentos a sus hijos menores de

edad emana esencialmente de dos (2) fuentes estatutarias consagradas en

nuestro Código Civil: Arts. 153 y 143 del Código Civil, 31 L.P.R.A.

sec. 601 y 562.[6]

El Art. 153 del Código Civil, supra, dispone que:

> El padre y la madre tienen, respecto de sus hijos no
> emancipados:
>
> (1) El deber de alimentarlos, tenerlos en su
> compañía, educarlos e instruirlos con arreglo a su
> fortuna, y representarlos en el ejercicio de todas
> las acciones que puedan redundar en su provecho.
>
> (2) La facultad de corregirlos y castigarlos
> moderadamente o de una manera razonable.

Por su parte, el Art. 143, supra, regula todo lo relacionado con

la provisión de alimento entre parientes y dispone lo siguiente.

> Están obligados recíprocamente a darse alimentos, en toda
> la extensión que señala la sec. 561 de este título:
>
> (1) Los cónyuges.
> (2) Los ascendientes y descendientes.
> (3) El adoptante y el adoptado y sus descendientes.
>
> Los hermanos se deben recíprocamente aunque sólo
> sean uterinos, consanguíneos o adoptivos los auxilio
> necesarios para la vida, cuando por un defecto
> físico o moral, o por cualquier otra causa que no
> sea imputable al alimentista, no puede éste
> procurarse su subsistencia. En estos auxilios
> están, en su caso, comprendidos los gastos
> indispensables para costear la instrucción elemental
> y la enseñanza de una profesión, arte u oficio.

---

[6] Se podría catalogar como tercera fuente de la obligación de los padres de proveer alimento a sus hijos menores al Art. 1308 del Código Civil, 31 L.P.R.A sec. 3661. Dicho artículo dispone que "[s]erá de cargo de la sociedad de gananciales: … el sostenimiento de la familia y la educación de los hijos comunes y de cualquiera de los cónyuges". Es decir, responsabiliza a la sociedad legal de gananciales de alimentar no sólo a los hijos de ambos sino también a los hijos de cualquiera de los cónyuges.

En Guadalupe Viera v. Morell, 115 D.P.R. 4, 12-13, reiterado en Rodríguez Amadeo v. Santiago Torres, supra, págs. 792-793, analizamos estos dos (2) artículos y distinguimos en cuanto a las obligaciones alimentarias de cada uno. Expresamos que:

> En el caso del Art. 153, es decir, la obligación alimenticia [sic] que emana del ejercicio de la patria potestad, se parte del supuesto de que el alimentista menor de edad está bajo la custodia del padre que ejerce sobre él la patria potestad, o de ambos si están casados entre sí. Como señala Beltrán de Heredia, no se trata estrictamente de una obligación alimenticia [sic] independiente o autónoma, sino que está incorporada al conjunto más amplio de deberes y derechos que representa la patria potestad, entre los cuales se encuentra el deber de convivir con los hijos, alimentarlos en su mesa, educarlos, guiarlos y representarlos. Este deber de alimentación, ínsito ... a la patria potestad, no depende de un estado de necesidad del hijo, pues éste incluso podría tener bienes suficientes para su sostenimiento y aún tener derecho a ser alimentado por sus padres con patria potestad, sino que se basa en el hecho mismo de la generación. (Escolios omitidos.)

En cuanto al Art. 143 del Código Civil, supra, dispusimos que:

> La obligación alimenticia[sic] que surge del Art. 143 se refiere al caso del padre o de la madre de hijos no emancipados que no viven en su compañía y sobre los cuales no tiene la patria potestad, y a hijos y otros parientes, no importa su edad, que tengan necesidad de alimentos, y siempre que el alimentante cuente con recursos para proveerlos. A diferencia de la obligación bajo el ejercicio de la patria potestad, el deber de proveer alimentos bajo el articulado del Código que regula los alimentos entre parientes [...] se basa en el estado de necesidad del hijo y depende de la condición económica del padre alimentante. Se distingue, además, en que la obligación es exigible cuando se demuestra la necesidad de alimentos del hijo y son reclamados judicialmente. (Énfasis suplido y citas omitidas.)

Antes de proseguir debemos aclarar lo expresado en torno al Art. 143 del Código Civil, supra, referente a la ausencia de la patria potestad de parte del padre alimentante.

Sabido es que la patria potestad es el conjunto de derechos y deberes que tienen los padres respecto a la persona y los bienes de sus hijos no emancipados. Torres, Ex parte, 118 D.P.R 469, 473 (1987); J.M. Castán Vázquez, La Patria Potestad, ed rev., Madrid, Rev. Der.

Privado, 1960, págs. 9-10,; I. Rivera García, _Diccionario de Términos Jurídicos_, 2da ed. rev., New Hampshire, Equity, 1985, pág. 199.  Puig Brutau la define como "el poder que [el ordenamiento jurídico reconoce] a los progenitores sobre los hijos menores no emancipados, para el cumplimiento de los deberes de alimentación, educación e instrucción". J. Puig Brutau, _Fundamento de Derecho Civil_, 2da ed., Barcelona, Ed. Bosh, 1990, T. V., pág. 245, Por su parte, el Art. 152 del Código Civil, 31 L.P.R.A. sec. 591, establece que la patria potestad <u>corresponde a ambos padres</u>.  Dispone, sin embargo, que la patria potestad corresponderá a sólo uno de los padres cuando: (i) el otro haya muerto, esté ausente o legalmente impedido, o (ii) cuando sólo uno de los padres haya reconocido o adoptado al menor.

Hoy, aún en casos de divorcio, no existe impedimento legal alguno para que, en la consecución del fin legítimo del mejor bienestar del menor, la patria potestad pueda ser compartida por ambos ex cónyuges. _Torres, Ex parte_, supra, pág. 480.[7]  Así, pues, a la luz de lo establecido en nuestro Código Civil, la doctrina y la jurisprudencia, **la patria potestad de los hijos menores corresponde a ambos padres, a menos que exista un impedimento legal o que el tribunal disponga lo contrario**.

No obstante lo anterior, en _Guadalupe Viera_ v. _Morell_, supra, ratificado en _Rodríguez Amadeo_ v. _Santiago Torres_, supra, se señaló **la ausencia de patria potestad del padre alimentante** como uno de los requisitos que deben estar presentes para que un hijo menor que no vive en compañía de éste pueda reclamar alimentos bajo el Art. 143 del Código Civil, supra.  Esta interpretación no tiene cabida en las

---

[7]   Como bien se expresó en _Torres, Ex parte_, supra, pág. 477, anteriormente, en los casos de divorcio, el cónyuge que resultaba inocente era al que se le adjudicaba la patria potestad de los hijos menores de edad.  Sin embargo, a raíz de la Ley Núm. 100 de 2 de junio de 1976, la cual enmendó el Art. 107 del Código Civil, 31 L.P.R.A sec. 383, se eliminó todo lo relacionado respecto a la culpabilidad de cualesquiera de los cónyuges al momento de adjudicar la patria potestad y custodia, y se proclamó como norma el bienestar del menor.  Véanse: _Nudelman_ v. _Ferrer Bolívar_, 107 D.P.R. 495, 508 (1978); _Marrero Reyes_ v. _García Ramírez_, 105 D.P.R. 90, 104 (1976).

disposiciones que emanan del texto del Art. 143 del Código Civil, supra, ni en la doctrina ratificada por nuestra jurisprudencia. Es decir, no podemos concluir que la carencia de patria potestad del padre alimentante es un requisito necesario para que sus hijos menores, que no viven en su compañía, puedan reclamar alimentos. Por consiguiente, no podemos avalar lo que a manera de dictum aparenta decirse en Guadalupe Viera, supra, en cuanto al requisito de la ausencia de patria potestad del padre alimentante. Véase Rodríguez Amadeo, supra. Más aún cuando en virtud de nuestra jurisprudencia hemos resuelto que los padres, aun después del divorcio pueden seguir ejerciendo la patria potestad de los hijos menores que no viven en su compañía. Nudelman v. Ferrer Bolívar, supra; Marrero Reyes v. García Ramírez, supra.[8]

En virtud de lo promulgado en torno a la figura de patria potestad compartida, aclaramos que los hijos menores, que no viven en compañía del padre alimentante, pueden solicitar alimentos, aun cuando este último ejerza la patria potestad.

Independientemente de lo expresado a través de nuestra jurisprudencia en torno a las fuentes de las cuales emana la obligación de alimentar, **la obligación de alimentar a los hijos menores es resultado de la relación paterno-filial y surge desde el momento en que la paternidad o maternidad quedan establecidos legalmente**. Esto quiere decir que el padre y la madre **legalmente establecidos** como tales, tengan o no la patria potestad o vivan o no en compañía de sus hijos menores, están obligados a velar por éstos y a proveerles alimento. **El derecho de los menores a reclamar alimento, la obligación de los padres de proveerlos y la interpretación de los tribunales para concederlos deben estar enmarcados en la relación paterno-filial legalmente establecida; no supeditada a uno u otro artículo del Codigo Civil.**

---

[8]    Cabe destacar que ni en Guadalupe Viera v. Morell, supra, ni en Rodríguez Amadeo v. Santiago Torres, supra, estaba en controversia la patria potestad del padre alimentante. En Guadalupe Viera, supra, la madre era la que tenía la patria potestad de los tres hijos menores, y en Rodríguez Amadeo, supra, se trataba de hijos mayores de edad.

Claro está, la cuantía de pensión alimentaria se fijará tomando en consideración, no sólo la necesidad de los hijos menores sino también la condición socio económica del padre alimentante.

Así, pues, el deber de alimentar, educar y criar a los hijos menores es como resultado de ser padre o madre, y existe con todos los efectos patrimoniales, jurídicos y morales desde el momento en que nace el hijo, irrespectivamente de las circunstancias de su nacimiento. Véase Soto Cabral v. E.L.A., Op. de 21 de diciembre de 1995, 138 D.P.R ____ (1995) 95 JTS 49, 808, 817.

Dentro de este marco doctrinal analicemos la controversia ante nuestra consideración. Primero, sin embargo, debemos determinar, a la luz de sus disposiciones e historial legislativo, cuál es el fin último que persigue la Ley de Sustento Menores. Comenzaremos nuestro análisis examinando brevemente algunos principios de hermenéutica legal.

## III

Sabido es que el legislador, al aprobar una ley, persigue como fin el "tratar de corregir un mal, alterar una situación existente, completar una reglamentación vigente, fomentar algún bien específico o el bienestar general, reconocer o proteger un derecho, crear una política pública o formular un plan de gobierno." R. E. Bernier y J.A. Cuevas Segarra, Aprobación e interpretación de las leyes en Puerto Rico, 2da ed. rev., Publicaciones JTS, 1987, Vol. 1, pág. 245-46.

Al dilucidar una controversia y adjudicar los derechos de las partes, los tribunales "deben interpretar las leyes aplicables a la situación de hechos que tienen ante sí, de forma que se cumpla cabalmente con intención legislativa." Bernier y Cuevas Segarra, supra, pág. 241.

De otra parte, en el proceso de indagar la intención del legislador es necesario examinar el historial legislativo. Si la ley tiene una exposición de motivos, ésta generalmente recoge el propósito

que inspiró su creación.  En los casos en que la ley carece de una exposición de motivos o, cuando aún teniéndola, no contiene la intención legislativa, es útil consultar otros documentos tales como los informes de las comisiones que estudiaron el proyecto de ley y los debates celebrados cuando la medida fue discutida en el hemiciclo, según aparecen en el Diario de Sesiones.  De igual manera se pueden utilizar los anteproyectos y los informes alrededor de los mismos que son preparados fuera de la Asamblea Legislativa, cuando ésta los tuvo ante sí y adoptó sustancialmente los anteproyectos.  Bernier y Cuevas Segarra, supra, pág. 243.

IV

A través de sus escritos, el señor Levis ha aceptado reiteradamente tener capacidad económica y ha indicado que, ante tal admisión, sólo restaría determinar la necesidad de los menores y la capacidad económica de la madre de éstos para fijar la cuantía que él viene obligado a pagar por concepto de alimentos.

Por su parte, la señora Chévere alega que, a tenor con el Art. 16 de la Ley de Sustento para Menores, supra, 8 L.P.R.A. sec. 515, el alimentante viene obligado a descubrir su situación económica.  Aduce que, para cumplir con el mandato de ley, es necesario la información de activos y pasivos, para lo cual la propia ley dispone de una "Planilla de Información Personal y Económica".  Resolvemos.

Como expresáramos al comienzo de nuestra ponencia, debemos determinar si una vez el padre alimentante acepta capacidad económica para pagar un pensión alimentaria razonable, aún está obligado bajo la Ley para el Sustento de Menores a descubrir sus ingresos como parte del proceso de fijar dicha pensión alimentaria.

Para la justa solución del asunto que hoy nos ocupa debemos interpretar dicho precepto a la luz de la reconocida norma de hermenéutica de que "[l]as leyes deben interpretarse y aplicarse en

comunión con el propósito social que las inspira. No deben desvincularse del problema humano cuya solución persiguen, ni descarnarse de las realidades de la vida que la sociedad misma ha proyectado sobre ellas, pues se tornaría ilusorio y se perdería en el vacío el deseo de justicia que las genera." Figueroa v. Díaz, 75 D.P.R. 163, 171 (1953). Véase, además: Pueblo v. Zayas Rodríguez, res. el 17 de febrero de 1999, 99 TSPR 15; y El Vocero de P.R. v. E.L.A., 131 D.P.R. 356, 432 (1992).

La Ley de Sustento de Menores, supra, se aprobó con el propósito de

> …procurar que los padres o las personas legalmente responsables contribuyan, en la medida en que sus recursos lo permitan, a la manutención y bienestar de sus hijos o dependientes mediante el fortalecimiento de los sistemas y la agilización de los procedimientos administrativos y judiciales para la determinación, recaudación y distribución de las pensiones alimentarias.
>
> El incumplimiento de las obligaciones morales y legales por parte de uno o ambos padres para con sus hijos constituye uno de los problemas más apremiantes en nuestra sociedad. Causas de este problema lo son el deterioro de los valores sociales, la desintegración de la unidad familiar, el aumento en el número de niños nacidos fuera de matrimonio, el alto número de divorcios y el desempleo.
>
> Ante el grave problema del incumplimiento de la obligación alimentaria hacia los hijos es necesario poner en vigor una política pública de paternidad responsable. Además, es posible hacerlo porque, en la mayoría de los casos, el padre incumplidor tiene la capacidad económica para satisfacer su obligación. (Énfasis nuestro.) Art. 3 de la Ley para el Sustento de Menores, 8 L.P.R.A. sec. 502.

Por su parte, la Exposición de Motivos de dicha ley dispone, en lo aquí pertinente, lo siguiente:

> Constituye política pública del Estado Libre Asociado de Puerto Rico que los padres o las personas legalmente obligadas asuman la responsabilidad que tienen para con sus hijos.

La intención legislativa y la declaración de política pública contenidas tanto en la exposición de motivos como en el Art. 3 de dicha legislación, procuran que los padres o las personas legalmente

responsables asuman el cumplimiento de sus obligaciones morales y legales de alimentar a sus hijos menores o dependientes. <u>Galarza Rivera</u> v. <u>Mercado Pagán</u>, supra, pág. 417. Véase, además, <u>López</u> v. <u>Rodríguez</u>, 121 D.P.R. 23, 28 (1988).

Como claramente surge de las disposiciones citadas, la legislación obedeció al problema apremiante que el Estado Libre Asociado confrontaba, y aún confronta, referente al incumplimiento de las obligaciones morales y legales por parte de uno o ambos padres de alimentar a sus hijos, conllevando el que el propio Estado tuviera que asumir tal responsabilidad y carga económica. Para garantizar que las personas llamadas a alimentar cumplieran con su obligación, la legislatura creó los mecanismos necesarios para el fortalecimiento de los sistemas y la agilización de los procedimientos administrativos y judiciales para la determinación, recaudación y distribución de las pensiones alimentarias. Art. 3 de la Ley para el Sustento de Menores, supra.

A tenor con lo anterior, podemos colegir que la legislación va dirigida a aquellas personas que tienen la obligación de alimentar y **que, por alguna razón, se niegan a cumplir con su responsabilidad**. Es precisamente la **negativa** a aceptar voluntariamente la capacidad económica la que activa el uso de los mecanismos dispuestos por la ley para descubrir la información relacionada a los ingresos y poder determinar así la suficiencia de pago del alimentante. Tal negativa a aceptar capacidad económica no sólo obliga a las partes a entrar en litigios arduos y escabrosos e incurrir en gastos legales sustanciales e innecesarios, sino que hace que el Estado tenga que utilizar de sus escasos recursos humanos y económicos perjudicando así no sólo a la parte que solicita los alimentos, sino a la política pública en general. Además, tiene como consecuencia el que los alimentos de los hijos tengan que ser adjudicados a base de las insensibles fórmulas de las guías mandatorias que, como bien señala Torres Peralta, **"poquísimas veces ayudan a la felicidad y bienestar de los hijos generalmente**

**abandonados espiritual y emocionalmente."**   S. Torres Peralta, <u>La ley</u> <u>especial de sustento de menores y el derecho de  alimentos en Puerto</u> <u>Rico</u>, ed. especial, Pubs. STP, Inc., pág. 14.2 (1997).

Es, pues, en este sentido que el Art. 16 de la  Ley Núm. 5, supra, 8 L.P.R.A. sec. 515 hace compulsorio el descubrimiento sobre la situación económica del alimentante en casos relacionados con las pensiones alimentarias para poder fijar la cuantía a pagar.[9]

Surge entonces con meridiana claridad que el propósito de dicha legislación es descubrir la suficiencia económica del llamado a alimentar para, conforme a ello, establecer una pensión alimentaria. Es decir, la legislación se activa **afirmativamente** cuando el obligado a alimentar se negare a aceptar o esté en duda su capacidad económica. Ahora bien, cuando este último fomenta la política del estado de **"paternidad voluntaria"** y admite capacidad económica, no es necesario que divulgue sus ingresos.  Más aún, cuando un padre alimentante acepta que posee suficientes ingresos para pagar la pensión alimentaria que en derecho proceda a favor de sus hijos, **promueve, con acierto, el interés público del bienestar de los menores y agiliza los procedimientos en cuanto a la otorgación de pensiones alimentarias**.  Por consiguiente, cuando el padre alimentante acepta su capacidad económica, se hace innecesario el descubrimiento de prueba, según dispuesto por ley.

En <u>General Electric</u> v. <u>Concessionaries, Inc.</u>, 118 D.P.R. 32, 42-43 (1986), dentro de otro tipo de controversia, resolvimos que cuando la condición o capacidad económica de la parte no está en controversia, o cuando se ha estipulado la suficiencia de la misma, no procede descubrimiento de prueba alguno al respecto.

A la luz de todo lo antes expuesto, resolvemos que, un alimentante queda exento del requisito de someter información sobre sus ingresos en

---

[9]   El Art. 16 de la Ley de Sustento para Menores, supra, dispone, en lo aquí pertinente, lo siguiente:

> En los procedimientos judiciales relacionados con pensiones
> alimenticias [sic], el descubrimiento sobre la situación
> económica del alimentante y alimentista será compulsorio.

la Planilla de Información Personal y Económica si acepta que tiene capacidad económica para proveer alimentos, quedando pendiente de resolver solamente las necesidades económicas del alimentista para así fijar la pensión alimentaria del alimentista.

En el caso de autos, el señor Levis ha reconocido y aceptado su capacidad económica, hecho que no está en controversia. Así pues, aceptada la capacidad económica del padre, sólo resta que el tribunal determine la suma justa y razonable por concepto de pensión alimentaria para los menores. Esto lo hará a la luz de la evidencia presentada por los menores con relación a sus necesidades y la situación económica de la madre. Esto, sin embargo, no exime al señor Levis de descubrir cualquier prueba que sea necesaria para que el tribunal pueda cumplir con su deber de fijar la pensión alimentaria que proceda de acuerdo a las necesidades particulares de los menores en este caso y conforme a la particular condición socioeconómica del padre.

Resta señalar que la Regla 23.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, concede a un tribunal la potestad de prohibir el descubrimiento de prueba cuando los fines de la justicia claramente lo requieran, particularmente cuando se solicita para proteger a una parte contra la opresión, el hostigamiento, la perturbación, las molestias o los gastos indebidos o innecesarios. General Electric v. Concessionaries, Inc., supra, y Rodríguez v. Scotiabank de P.R., 113 D.P.R. 210, 216-217(1982).

Ante la admisión de capacidad económica del señor Levis, procedía entonces declarar con lugar la orden de protección solicitada por éste.

En atención a lo anteriormente expuesto, es menester puntualizar que si el alimentante acepta tener capacidad económica, luego no puede impugnar la pensión que haya sido fijada conforme a las necesidades razonables del alimentista alegando que él no tiene capacidad económica para pagarla.

No debemos finalizar sin antes recordar lo que hace casi medio siglo este Tribunal, por voz del entonces Juez Asociado señor Negrón

Fernández, expresó:

> **…Las leyes se hacen por los hombres y se interpretan para los hombres.   Por eso, en su interpretación, debe ser factor preeminente la realidad humana de la vida, no la abstracción dogmática de reglas eternas e inmutables…  en esta época de justicia social debemos marchar hacia la humanización de la justicia y el derecho dejando atrás en su decadencia rigorista el sentido dogmático del derecho y la  justicia.    (Énfasis  nuestro  y  citas  omitidas.)** Figueroa v. Díaz, supra, pág.175.

Por los fundamentos antes expuestos, se dictará sentencia mediante la cual se confirmará la dictada por el Tribunal de Circuito de Apelaciones.   Se devuelve el caso al Tribunal de Primera Instancia, Sala Superior de San Juan, para que continúe con los procedimientos de forma compatible con lo aquí resuelto.


                              MIRIAM NAVEIRA DE RODÓN
                                  Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

María G. Chévere, etc.

    Peticionaria

       v.                            CC-1997-313

Salomón Levis Goldstein

    Recurrido

SENTENCIA

San Juan, Puerto Rico, a 15 de marzo de 2000

Por los fundamentos expuestos en la Opinión que antecede, se dicta sentencia mediante la cual se confirma la dictada por el Tribunal de Circuito de Apelaciones.  Se devuelve el caso para que continúe con los procedimientos de forma compatible con lo aquí resuelto.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.  El Juez Asociado señor Rebollo López no interviene.  El Juez Asociado señor Hernández Denton está inhibido.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo