Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| **JUAN GUALBERTO SANTIAGO TORRES**<br><br>Peticionario<br><br>v.<br><br>**CARMEN VANESSA ACEVEDO ANNONI**<br><br>Recurrida | KLCE202401329 | **CERTIORARI**<br>Procedente del Tribunal de Primera Instancia, Sala Superior de **Caguas**<br><br>Caso Núm.:<br>**BY2023RF01089 (Salón 502)**<br><br>Sobre: **DIVORCIO – RUPTURA IRREPARABLE** |

Panel integrado por su presidenta la Juez Domínguez Irizarry, el Juez Ronda del Toro y el Juez Pérez Ocasio

Pérez Ocasio, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 7 de marzo de 2025.

Comparece ante nos, Juan G. Santiago Torres, en adelante Santiago Torres o peticionario, solicitando que revisemos la "*Resolución*" del Tribunal de Primera Instancia, Sala de Caguas, en adelante TPI-Caguas, del 26 de septiembre de 2024, en la cual se le impuso al peticionario la capacidad económica. De igual forma, nos solicita que se revierta el caso a la Examinadora de Pensiones Alimentarias, en adelante, EPA, para que continúen los procesos bajo la Ley de Sustento de Menores.

Por los fundamentos que expondremos a continuación, *expedimos el auto solicitado y se revoca la Resolución recurrida.*

**I.**

El 16 de junio de 2023, Santiago Torres radicó una demanda de divorcio por la causal de Ruptura Irreparable, en la que solicitó la custodia compartida, contra Carmen V. Acevedo Annoni, en

Número Identificador
SEN2025_____

adelante, Acevedo Annoni o recurrida.[1] Durante el matrimonio, las partes procrearon dos (2) hijas, quienes al momento de los hechos eran menores de edad. Actualmente, la hija mayor cursa estudios universitarios en Estados Unidos, y la menor se encuentra en una escuela privada en Puerto Rico. El 6 de septiembre de 2023 la parte demandada contestó la demanda y presentó una reconvención.[2] Por su parte, el 27 de septiembre de 2023, Santiago Torres contestó dicha reconvención.[3]

Ahora bien, el *Acta de la Examinadora de Pensiones Alimentarias* del 2 de octubre de 2023 reflejó que las partes comparecieron a una vista el 15 de agosto de 2023.[4] La representación legal del peticionario planteó que Santiago Torres se encontraba asumiendo la totalidad de los gastos de las menores, pero que aún se encontraba analizando si optaría por aceptar la capacidad económica o no.

Más adelante, el 16 de noviembre de 2023, el TPI-Caguas notificó la "*Sentencia de Divorcio*", en donde se le impuso a Santiago Torres el pago de lo siguiente: setecientos cincuenta dólares ($750.00) mensuales como pensión alimentaria provisional, el cien por ciento (100%) de los gastos de la matrícula y la mensualidad de la escuela de su hija menor, los gastos de utilidades de agua hasta un tope de ciento veinticinco dólares ($125.00) mensuales, luz con un tope de quinientos cuarenta y cinco dólares ($545.00) mensuales, servicio de internet, *Netflix*, celulares y el vehículo que utilizaba la recurrida.[5] Además, Santiago Torres tendría la obligación de continuar pagando la hipoteca de la casa familiar y la cuota de la Asociación de la Urbanización.[6] De igual forma, tanto la

---

[1] Apéndice del recurso, pág. 00346.
[2] *Id.*, pág. 00313.
[3] *Id.*, pág. 00301.
[4] *Id.*, pág. 00299.
[5] *Id.*, pág. 00289.
[6] *Id.*, pág. 00290.

recurrida como sus hijas, continuarían beneficiándose del plan médico que le ofrece el patrono del peticionario.[7] En adición, el TPI-Caguas indicó que la patria potestad sería compartida.[8]

Posteriormente, el 4 de febrero de 2024, la recurrida presentó una *"Urgentísima Moción en Solicitud de Medidas Protectoras".[9]* En la misma, la recurrida alegó que el peticionario incumplió con su obligación de cubrir los gastos universitarios de la hija mayor, provocando que se le enviara a esta una carta de desahucio de su hospedaje universitario.[10] Por ello, le solicitó al TPI-Caguas que le ordenara al peticionario cumplir con su obligación, y como consecuencia, pagar lo adeudado a la universidad.

De igual forma, el 7 de febrero de 2024, la recurrida presentó una *"Urgentísima Moción en solicitud de Pensión Excónyuge y otros Remedios".[11]* En la misma, la recurrida alegó que Santiago Torres incumplió con su obligación de pagar la deuda hipotecaria. Adicionalmente, solicitó que se declarara dicho inmueble como el hogar seguro de las menores, y que se le estableciera una pensión excónyuge.[12]

Mientras tanto, el *Acta de la Examinadora de Pensiones Alimentarias* del 15 de marzo de 2024 hizo constar que las partes comparecieron a la vista de fijación de pensión alimentaria pautada para el 24 de enero de 2024.[13] En esta vista, Santiago Torres indicó que luego que evaluara la documentación que le compartió la recurrida como parte del descubrimiento de prueba, estaría en posición de indicar si aceptaría o no la capacidad económica. Además, se les ordenó a las partes a presentar una moción conjunta

---

[7] Apéndice del recurso, pág. 00290.
[8] *Id.*, pág. 00289.
[9] *Id.*, pág. 00252.
[10] *Id.*, pág. 00256.
[11] *Id.*, pág. 00246.
[12] Con respecto a la pensión excónyuge, el 7 de marzo de 2024 el TPI-Caguas resolvió que dicha reclamación no era acumulable bajo este expediente, por lo que debería presentar una reclamación aparte. *Id.,* pág. 00239.
[13] *Id.,* pág. 00236.

detallando la evidencia estipulada y en controversia con su fundamento en derecho.

Así las cosas, el 21 de marzo de 2024, el peticionario presentó su "*Oposición a 'Urgentísima Moción en Solicitud de Medidas Protectoras'*".[14] En esta, el peticionario alegó que no contaba con los recursos económicos para cubrir los gastos universitarios de su hija mayor. Además, el peticionario recalcó que, previo a la presentación de la moción, le comunicó este hecho a la recurrida y a su hija mayor.

Acogiendo las recomendaciones del "*Informe Social*", rendido el 25 de marzo de 2024 por el trabajador social Eddie Rivera Solis, el Foro Primario emitió una "*Resolución*", el 24 de abril de 2024, concediéndole un término a las partes para presentar un listado de los testigos y peritos que presentarían en la próxima vista. Además, ordenó a las partes a mostrar causa y fundamento en derecho por la cual el Tribunal no debería optar por acoger las recomendaciones del "*Informe Social*". Por otro lado, el 28 de mayo de 2024 la EPA expidió una "*Orden de la Examinadora de Pensiones Alimentarias*".[15] En la orden se les indicó a las partes que tendrían hasta el 5 de septiembre de 2024 para presentar una moción conjunta, y que su incumplimiento conllevaría la recomendación de sanciones económicas.[16] Posteriormente, el 3 de julio de 2024 Santiago Torres presentó una "*Moción en Cumplimiento de Orden*", en la cual indicaba su desacuerdo con el Informe Social presentado por el trabajador social Eddie Rivera Solis.[17] Sin embargo, el peticionario decidió que no impugnaría dicho informe.

Así las cosas, el 11 de julio de 2024 la recurrida radicó "*Urgentísima Moción en Solicitud de Desacato y Otros Remedios*", en

---

[14] Apéndice del recurso, pág. 00190.
[15] *Id.*, pág. 00164.
[16] *Id.*
[17] *Id.*, pág. 00154.

la cual alegó que Santiago Torres incumplió con el pago de la pensión alimentaria, no pagó el colegio de la hija menor en mayo, y llevaba seis (6) meses sin pagar la hipoteca.[18] Por ello, la recurrida solicitó que se le encontrara incurso en desacato al peticionario, y, nuevamente, solicitó que se declarara como hogar seguro la vivienda afectada por dicha hipoteca. Por este motivo, el 22 de agosto de 2024 el peticionario radicó una "*Réplica a Urgentísima Moción en Solicitud de Desacato y Otros Remedios*".[19] En la misma, el peticionario alegó que se encontraba ante la imposibilidad económica de continuar pagando la hipoteca y solicitó que la recurrida firmara un programa de "*Loss Mitigation*" con el acreedor hipotecario para poder establecer un plan de pago. Santiago Torres alegó que intentó comunicarse con la recurrida para comunicarle la necesidad de adherirse a dicho programa para evitar una demanda en ejecución de hipoteca, pero que no había recibido respuesta de esta. Además, indicó que, contrario a lo alegado por la recurrida, este sí había cumplido con los pagos de la pensión alimentaria y del colegio de la hija menor. Asimismo, el peticionario recalcó que *no poseía los recursos económicos para pagar la educación universitaria de la hija mayor en Estados Unidos*. La recurrida presentó, el 26 de agosto de 2024, una "*Réplica a Oposición*" a esta última, en la cual, entre otras cosas, le solicita al Foro Primario que tome una determinación sobre las mociones previamente sometidas.[20]

Por otro lado, el 12 de septiembre de 2024 la EPA emitió una orden indicando que las partes no habían cumplido con la entrega de la moción conjunta, según ordenado previamente el 28 de mayo de 2024. [21] En ella, les notificó que tendrían hasta el 19 de septiembre de 2024 para entregar la misma, y que su

---

[18] Apéndice del recurso, pág. 00142.
[19] *Id.*, pág. 00127.
[20] *Id.*, pág. 00122.
[21] *Id.*, pág. 00112.

incumplimiento conllevaría la recomendación de sanciones económicas. Ese mismo día, la recurrida presentó una "*Moción sometiendo PIPE*".[22]

Así también, el 23 de septiembre de 2024 Acevedo Annoni presentó una "*Urgentísima Moción en Solicitud de Desacato y de Remedios Urgentes y sobre Moción y Orden de EPA [6]4*".[23] Entre varios asuntos, la recurrida solicitó que se encontrara incurso en desacato al peticionario.

Así las cosas, el 26 de septiembre de 2024 el TPI-Caguas notificó la "*Resolución*", recurrida por el peticionario, en la que determinó que el peticionario "ha[bía] sido ambivalente en cuanto a su postura *por lo que se entiende que ha[bía] asumido capacidad económica*".[24] (Énfasis nuestro).

Posteriormente, el 1 de octubre de 2024 el peticionario presentó su PIPE.[25] Dos días después, el 3 de octubre de 2024, la EPA emitió una orden, en la cual indicó que, aunque tomaba conocimiento de la presentación de la PIPE de cada una de las partes, estas aún no habían cumplido con su orden de presentar la moción conjunta.[26]

Ahora bien, el 11 de octubre de 2024 el peticionario solicitó la reconsideración de la "*Resolución*" notificada por el TPI-Caguas el 26 de septiembre de 2024, y suplicó al Foro Recurrido que no asumiera su capacidad económica.[27]

Unos días más tarde, el 15 de octubre de 2024, el peticionario presentó una "*Moción en cumplimiento de orden de la Examinadora de Pensiones Alimenticias y sobre Moción en Conjunta*".[28] En la misma, Santiago Torres alegó que no logró reunirse con la recurrida

---

[22] Apéndice del recurso, pág. 00114.
[23] *Id.*, pág. 00096.
[24] *Id.*, pág. 00093.
[25] *Id.*, pág. 00070.
[26] *Id.*, pág. 00052.
[27] *Id.*, pág. 00042.
[28] *Id.*, pág. 00037.

para preparar la moción conjunta solicitada por la EPA, y que mediante la presente, incluía la parte que le correspondía. Al día siguiente, la recurrida presentó una "*Moción en Cumplimiento de Orden sobre Mostrar Causa*", alegando que el peticionario había impedido la preparación de la moción conjunta, al no llevar a cabo el descubrimiento de prueba solicitado.[29] Por ello, la recurrida se negó a cumplir con la presentación de una moción conjunta, hasta tanto el peticionario le entregara los documentos previamente solicitados. En adición, la recurrida presentó una "*Urgentísima Petición en Solicitud de Pensión Ex Cónyuge*", solicitando que se señalara una vista para establecer la pensión excónyuge provisional y luego la final, se le ordenara al peticionario a cumplir con la obligación hipotecaria, entre otras.[30]

Además, Acevedo Annoni se opuso a la reconsideración solicitada por el peticionario, mediante moción del 28 de octubre de 2024.[31] El 8 de noviembre de 2024 el TPI-Caguas notificó su determinación de "*No Ha Lugar*" a la "*Moción de Reconsideración*" presentada por Santiago Torres.[32] De igual forma, el 22 de noviembre de 2024 el TPI-Caguas notificó una "*Resolución*", en donde le otorgó la custodia de las menores a la recurrida y suspendió las relaciones paternofiliales del peticionario con las menores, entre otras cosas.[33]

Inconforme, el 9 de diciembre de 2024 el peticionario radicó un recurso de *Certiorari* ante este Foro, solicitando que revisemos la "*Resolución*" notificada por el TPI-Caguas el 26 de septiembre de 2024. En el mismo nos hace los siguientes señalamientos de error:

> **PRIMER ERROR:** ERRÓ EL TPI Y ABUSÓ DE SU DISCRECIÓN AL IMPONER LA CAPACIDAD ECONÓMICA A LA PARTE.

---

[29] Apéndice del recurso, pág. 00031.
[30] *Id.*, pág. 00022.
[31] *Id.*, pág. 00017.
[32] *Id.*, pág. 00010.
[33] *Id.*, pág. 00003.

**SEGUNDO ERROR:** ERRÓ EL TPI ANTE LA IMPOSICIÓN DE CAPACIDAD ECONÓMICA A PARTE DEMANDADA-RECURRIDA EN SU RESOLUCIÓN, SE DEBE INTERPRETAR SIENDO UN ERROR DE DERECHO A LA PARTE DEMANDANTE-RECURRENTE.

**TERCER ERROR:** ERRÓ EL TPI Y ABUSÓ DE SU DISCRECIÓN AL IMPONER LA CAPACIDAD ECONÓMICA A LA PARTE COMO SANCIÓN ECONÓMICA, LO QUE NO PROCEDE EN DERECHO.

**CUARTO ERROR:** ERRÓ EL TPI Y ABUSÓ DE SU DISCRECIÓN CUANDO SOLO LA PARTE, ES LA QUE ACEPTA O ADMITE LA *PATERNIDAD VOLUNTARIA* SOBRE LA ACEPTACIÓN DE CAPACIDAD ECONÓMICA AL ESTABLECER LA FIJACIÓN DE PENSIÓN ALIMENTARIA.

**QUINTO ERROR:** SE VIOLÓ EL DEBIDO PROCESO DE LEY AL IMPONER SANCIÓN ECONÓMICA EN REFERENCIA A LA RECOMENDACIÓN DADA POR LA EPA EN SU ACTA DEL 28 DE MAYO DE 2024. EN DICHA ACTA NO SE DISPUSO LA IMPOSICIÓN DE ACEPTACIÓN DE CAPACIDAD ECONÓMICA NI SE RECOMENDÓ COMO SANCIÓN O PENALIDAD.

La recurrida compareció ante nos el 9 de enero de 2025, *por derecho propio*, solicitando que se le proveyera una prórroga para presentar su oposición al recurso presentado. Vencido el término de treinta (30) días otorgado, la recurrida no presentó su recurso en oposición.

Así las cosas, evaluado el recurso ante nos, procedemos a expresarnos.

## II.

### A. Certiorari

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.,* 207 DPR 994, 1004 (2021); *800 Ponce de León v. AIG,* 205 DPR

163, 174-175 (2020). Ahora bien, tal discreción no opera en lo abstracto. Con respecto a lo anterior y para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone, en su parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> [. . .]

Según se desprende de la citada Regla, este foro apelativo intermedio podrá revisar órdenes interlocutorias discrecionalmente, cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia o que revistan interés público, o en aquellas circunstancias en las que revisar el dictamen evitaría un irremediable fracaso de la justicia, entre otras contadas excepciones. *Mun. de Caguas v. JRO Construction,* 201 DPR 703, 710-711 (2019).

Luego de auscultar si el recurso discrecional cumple con las disposiciones de la Regla 52.1 de Procedimiento Civil, supra, el

tribunal procederá a evaluar el recurso a la luz de la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40. La mencionada Regla expone los criterios que esta Curia deberá considerar para ejercer sabia y prudentemente su decisión de atender o no las controversias ante sí. *IG Builders et al. v. BBVA PR,* 185 DPR 307, 338-339 (2012); *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 96-97 (2008). Véase, además, *Rivera et al. v. Arcos Dorados et al.,* supra; *Pueblo v. Rivera Montalvo,* 205 DPR 352, 372 (2020).

Así, la Regla 40 del Reglamento del Tribunal de Apelaciones, supra, funge como complemento a la Regla 52.1 de Procedimiento Civil, *supra. Torres González v. Zaragoza Meléndez,* supra. La precitada Regla dispone lo siguiente:

> El [T]ribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A)    Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B)    Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C)    Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D)    Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E)    Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.
>
> (F)    Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G)    Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

4 LPRA Ap. XXII-B, R. 40.

Sin embargo, ninguno de los mencionados criterios es determinante por sí solo para este ejercicio y no constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97. (Énfasis omitido).

Nuestro Tribunal Supremo ha expresado también que, de ordinario, el tribunal revisor "no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial*". W.M.M, P.F.M. et. al. v. Colegio, et. al.*, 211 DPR 871, 902-903 (2023); *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Véase, además, *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

### B. Aceptación de Capacidad Económica

El Artículo II, Sección 7, de la Constitución de Puerto Rico, LPRA, Tomo 1, establece como derecho fundamental el derecho a la vida. Como parte de este derecho, surge la obligación de todo progenitor de proveer alimentos a sus hijos. *James Soto v. Montes James*, 2024 TSPR 27, 213 DPR ___ (2024); *Díaz Rodríguez v. García*

*Neris*, 208 DPR 706, 717 (2022); *Umpierre Matos v. Juelle, Mejía*, 203 DPR 254, 266 (2019); *De León Ramos v. Navarro Acevedo*, 195 DPR 157, 169 (2016); *Chévere v. Levis*, 150 DPR 525, 533 (2000). Se entiende que "[l]a obligación de alimentar al menor es inherente a la maternidad y a la paternidad, por lo que recae sobre los obligados desde el momento en el que la relación filial queda establecida legalmente, independientemente de las fuentes de las cuales emana la obligación de alimentar". *Díaz Rodríguez v. García Neris*, supra, pág. 718. Es decir que "[a]demás de ser un deber moral, se trata de un deber jurídico constituido, en el que los padres o las personas legalmente responsables son llamados a contribuir a la manutención y al bienestar de sus hijos menores dependientes". *James Soto v. Montes James*, supra.

Ahora bien, por *alimentos* se entiende todo aquello que "es indispensable para el sustento, la vivienda, la vestimenta, la recreación y la asistencia médica de una persona, según la posición social de su familia. Código Civil de Puerto Rico de 2020, en adelante, Código Civil, Ley Núm. 55 de 1 de junio de 2020, 31 LPRA sec. 7531. Cuando se trata de un menor de edad, el Código Civil, supra, también reconoce como alimentos su educación, además de los gastos extraordinarios para la atención de sus condiciones personales especiales. *Id.*

Es importante resaltar que, en Puerto Rico, el ordenamiento jurídico ha reconocido que los casos relacionados con la obligación de los progenitores de proveerle alimento a los menores son del más alto interés público. *James Soto v. Montes James*, supra; *Santiago, Maisonet v. Maisonet Correa*, 187 DPR 550, 559 (2012); *Umpierre Matos v. Juelle, Mejía*, supra, pág. 265. Por ello, mediante la *Ley Orgánica de la Administración para el Sustento de Menores*, en adelante, Ley para el Sustento de Menores, Ley Núm. 5 de 30 de diciembre de 1986, 8 LPRA sec. 502, se declaró como política pública

del Gobierno de Puerto Rico "procurar que los padres o las personas legalmente responsables contribuyan, en la medida en que sus recursos lo permitan, a la manutención y bienestar de sus hijos o dependientes". Esta ley busca "descubrir la suficiencia económica del llamado a alimentar para, conforme a ello, establecer una pensión alimentaria". *Chévere v. Levis*, supra, pág. 544. Es decir, la ley actúa afirmativamente cuando quien viene obligado a prestar alimento se niega a hacerlo o está en duda su capacidad económica. *Id.*

Para cumplir con su propósito, la ley promueve que se utilicen las *Guías Mandatorias para Computar las Pensiones Alimentarias* en Puerto Rico. Las mismas, a través de un amplio y compulsorio descubrimiento de prueba sobre la situación económica de los llamados por ley a proveer alimentos, "permiten establecer de manera uniforme y equitativa la aportación monetaria de cada parte mediante criterios numéricos y descriptivos que toman en consideración los ingresos de los obligados y las necesidades de los menores". *Díaz Rodríguez v. García Neris,* supra, pág. 719; *De León Ramos v. Navarro Acevedo,* supra pág. 171. Las Guías se basan "en los ingresos, ganancias y otra evidencia que refleje la capacidad de pago de la persona no custodia y de la persona custodia, teniendo en consideración las necesidades de los menores". Ley para el Sustento de Menores, supra, sec. 518. Como parte de este proceso, la ley le requiere a las partes la presentación de la *"Planilla de Información Personal y Económica"*, también conocida como la PIPE. Ley para el Sustento de Menores, supra, sec. 522.

Ahora bien, cuando el alimentante acepta la *capacidad económica*, queda exento de llevar a cabo el descubrimiento de prueba de su situación económica. *Díaz Rodríguez v. García Neris,* supra, pág. 719; *Chévere v. Levis*, supra, pág. 544 - 545; *De León Ramos v. Navarro Acevedo*, supra, pág. 173. En consecuencia, el

alimentante queda igualmente exento de presentar información mediante la PIPE. *Chévere v. Levis*, supra, pág. 545. "[L]a aceptación de capacidad económica es una decisión ***voluntaria***, que toma un padre o una madre, mediante la cual se compromete a cubrir todas las necesidades que en su día se establezcan como parte de una pensión alimentaria". *De León Ramos v. Navarro Acevedo*, supra, pág. 176. (Énfasis suplido). Al tratarse de una *decisión voluntaria*, el alimentante retiene la facultad de retirar la misma. *Id.,* pág. 179.

Al aceptar su capacidad económica, el alimentante "promueve, con acierto, el interés público del bienestar de los menores y agiliza los procedimientos en cuanto a la otorgación de pensiones alimentarias". *Chévere v. Levis*, supra, pág. 544. Al contar con esta aceptación del alimentante, el Tribunal solo tendrá que determinar la suma justa y razonable de la pensión alimentaria. *Díaz Rodríguez v. García Neris,* supra, pág. 719; *Santiago, Maisonet v. Maisonet Correa*, supra, pág. 565; *Pesquera Fuentes v. Colón Molina*, 202 DPR 93, 110-111 (2019); *Chévere v. Levis*, supra, pág. 545. Para ello, el Tribunal tomará en consideración las necesidades del menor y la capacidad económica de la persona custodia. *De León Ramos v. Navarro Acevedo*, supra, pág. 175; *Santiago, Maisonet v. Maisonet Correa*, supra, pág. 566.

Sin embargo, como consecuencia de haber aceptado la capacidad económica, le corresponderá al alimentante pagar el cien por ciento (100%) de los gastos razonables de los menores**.** *Santiago, Maisonet v. Maisonet Correa*, supra, pág. 571. Asimismo, el alimentante no podrá impugnar la pensión alimentaria que se establezca de acuerdo con las necesidades del alimentista, alegando que no tiene los recursos económicos para cumplir con su obligación. *Pesquera Fuentes v. Colon Molina*, supra, pág. 111; *Santiago, Maisonet v. Maisonet Correa*, supra, pág. 565; *Chévere v. Levis*, supra, pág. 546.

**III.**

En el caso de marras, el peticionario acude ante esta Curia impugnando la "*Resolución*" del TPI-Caguas en su contra, en la cual se le impuso la aceptación de capacidad económica. En su recurso, Santiago Torres expone cinco (5) errores, los cuales, por su estrecho vínculo, discutiremos en conjunto. En esencia, el peticionario arguye que el Foro recurrido abusó de su discreción al imponerle, a modo de sanción, la aceptación de capacidad económica.

Según reseñamos previamente, nuestro ordenamiento jurídico ha reconocido que la aceptación de la capacidad económica es una decisión *voluntaria* del alimentante, en donde este se compromete a cubrir la totalidad de los gastos razonables del menor. De no aceptar la capacidad económica, se determinará el monto de la pensión alimentaria siguiendo los parámetros establecidos en la *Ley Orgánica de la Administración para el Sustento de Menores*, supra.

En el caso ante nos, Santiago Torres hizo constar en múltiples ocasiones que no contaba con los recursos económicos para cubrir la totalidad de los gastos de sus hijas menores. Por ejemplo, surge tanto de las comunicaciones privadas entre las partes, anejadas como evidencia, como de las mociones y escritos ante el TPI-Caguas, que el peticionario siempre verbalizó las dificultades económicas que había enfrentado durante el litigio. De igual forma, fue consistente en comunicar que se encontraba analizando si pudiese o no aceptar la capacidad económica. Lo cierto es que, del expediente que obra en autos, no hemos observado que el peticionario haya voluntariamente aceptado la capacidad económica que el Tribunal, contrario a derecho, le impuso. Tampoco se le advirtió que, el incumplimiento con previas órdenes, conllevaría la imposición de aceptación de capacidad económica como sanción o penalidad.

Por ende, a raíz de los antes expuesto, expedimos el auto solicitado y *revocamos* la determinación del TPI-Caguas, dejando sin efecto la misma. Se ordena que se remita el caso a la Examinadora de Pensiones Alimentarias para que continúen los procesos bajo la Ley de Sustento de Menores.

**IV.**

Por los fundamentos que anteceden, se expide el auto de *Certiorari* solicitado y se *revoca* la "*Resolución*" recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones