*745 TEXTO COMPLETO DE LA SENTENCIA
Los apelantes, el señor José Herrero Chávez y las señoras Teresita Herrero Chávez, Onelia Hernández Chávez y Nancy Hernández Chávez, nos solicitan que revoquemos una sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 21 de diciembre de 2007. [1] En ésta, se fijó en $l,846v34 la pensión alimentaria mensual que los peticionarios debían pagarle a su madre, la señora Bertha Chávez Toledo, a razón de $461.58 cada uno.
Inconformes, José, Onelia y Teresita aducen que el Tribunal de Primera Instancia incidió al imputarle a los hijos de la alimentista el pago de la pensión en igual proporción, por considerar que no todos los hijos de la demandante tienen los mismos recursos económicos. Además, señalan que el referido foro debió permitir que se realizara descubrimiento de prueba con relación a la capacidad económica de la señora Nancy Hernández Chávez. Esta, por su parte, señala que el foro apelado erró al concluir que entre ella y la señora Chávez Toledo ocurrió una reconciliación que subsanó el abandono de Nancy por parte de la demandante. Además, aduce que el tribunal a quo no debió incluir, dentro del monto de la pensión impuesta, gastos correspondientes a condiciones médicas no probadas y viajes a Cuba.
Por los fundamentos que expondremos a continuación, se modifica la sentencia recurrida y, así modificada, se confirma.
I
Según surge del récord ante este Tribunal, los hechos del caso son como sigue.
El 13 de octubre de 2005, la señora Chávez Toledo presentó una petición de alimentos ante la Sala de San Juan del Tribunal de Primera Instancia, contra una de sus hijas, la señora Nancy Hernández Chávez. Adujo ser una persona de edad avanzada, carente de recursos económicos suficientes para sufragar sus alimentos y demás gastos personales, por lo cual su hija Nancy estaba obligada a proveerle mensualmente una cantidad de dinero suficiente para satisfacer sus necesidades básicas de vivienda, alimentación y gastos médicos.
Nancy contestó la demanda y alegó que la señora Chávez Toledo la había abandonado a los 7 meses de nacida y que no había sido, sino hasta el año 1992 que se habían encontrado nuevamente. Señaló que entre Doña Bertha y ella nunca había existido una relación de madre e hija, y que la señora Chávez Toledo tenía otros tres hijos residiendo en Puerto Rico —de nombres José y Teresita Herrero Chávez y Onelia Hernández Chávez— que sí estaban obligados a proveerle alimentos. Todos los cuales fueron traídos por Nancy al litigio *746 en calidad de terceros demandados.
Luego de varios incidentes procesales, el Tribunal de Primera Instancia celebró una vista evidenciaría a los únicos efectos de determinar si Nancy Hernández Chávez había sido, según alegaba, abandonada durante su niñez por la señora Chávez Toledo. Luego de evaluar ¡a evidencia presentada, el Tribunal de Primera Instancia formuló, entre otras, las siguientes determinaciones de hechos:

“Doña Bertha nació en la provincia de Oriente Songo en Santiago de Cuba. En 1968 contrajo matrimonio con el señor Misael Hernández Torres, fruto del cual nacieron sus hijas mayores, Onelia y Nancy. Doña Bertha dejó a las niñas al cuidado de su hermana Catalina Chávez porque no contaba con los recursos económicos necesarios para mantenerlas. Luego de divorciarse del señor Hernández Torres, se casó con el señor José Herrero, con quien procreó tres hijos: José, Mayté y Teresita. ”

Con el pasar de los años, Nancy y su señora madre perdieron comunicación y no fue sino hasta agosto de 1992 —en ocasión de una visita de Nancy, que ya residía en Puerto Rico, a Cuba— que volvieron a verse. Nancy realizó los trámites de inmigración necesarios para que Doña Bertha y su esposo José establecieran su residencia en Puerto Rico. Desde el 1996 hasta el 1999 vivieron en la casa que Nancy compartía con su entonces esposo, el señor Salomón Levis, luego de lo cual se trasladaron a un apartamento en El Condado. Durante este tiempo, tanto Bertha, como su esposo, generaban ingresos producto de las labores que realizaban en las empresas propiedad del matrimonio Levis Hernández. En el año 2000, el señor Herrero falleció y Nancy asumió el pago de algunos de los gastos de la señora Chávez Toledo. En septiembre de 2004, Nancy le envió una carta a Doña Bertha en la cual le informó que no seguiría pagando los gastos que hasta ese momento había cubierto.
Énfasis Suplido.
El 16 de febrero de 2007, el foro apelado emitió una resolución en la cual concluyó que aunque, en efecto, la señora Chávez Toledo había abandonado a su hija cuando ésta era aún muy pequeña, Nancy reestableció voluntariamente la comunicación con su progenitora y se produjo una reconciliación entre las partes. En consecuencia, resolvió que Doña Bertha tenía derecho a recibir pensión alimentaria por parte de Nancy.
Luego de varios trámites procesales, el Tribunal de Primera Instancia celebró ■ — los días 29 de julio, 17 y 24 de septiembre y 1 de octubre de 2007 — , una vista evidenciaría con el propósito de estar en posición de poder determinar la razonabilidad de la cuantía de la pensión solicitada por Doña Bertha. El 21 de diciembre de 2007, el foro a quo emitió la resolución apelada, en la cual estableció en $1,846.34 mensuales la pensión alimentaria que le correspondía recibir a Doña Bertha por parte de sus cuatro hijos, a razón de $461.58 de cada uno.
II
En primer lugar, es menester señalar que el Tribunal de Primera Instancia no se equivocó al concluir que Doña Bertha Chávez Toledo tiene derecho a recibir una pensión alimentaria por parte de sus hijos.
La Ley para el Fortalecimiento del Apoyo Familiar y Sustento de Personas de Edad Avanzada, Ley Núm. 168 del 12 de agosto de 2000, 8 L.P.R.A. secs. 711 et seq, dispone que es obligación de los descendientes de las personas de edad avanzada contribuir mediante alimentos con su sustento. Art. 4 de la Ley 168, 8 L.P.R.A. see. 712. La Ley 168, supra, está dirigida a garantizar la integridad física y emocional de las personas de edad avanzada mediante el apoyo familiar de sus descendientes. Es para lograr este fin, que se imponen obligaciones de índole económicas y morales a los descendientes adultos de las personas de edad avanzada.
Para lograr el propósito establecido en el citado Art. 4, el Tribunal de Primera Instancia puede ordenarles a los descendientes de las personas de edad avanzada hacer una aportación económica —o, como forma *747 alternativa de pago, una aportación no económica justa y razonable— por concepto de pensión alimentaria. Este deber de mantener a las personas de edad avanzada continúa aun cuando ésta se haya ubicado en un hogar de cuido o se encuentre bajo la custodia de otra persona, de una agencia o institución pública o privada. Para hacer efectiva la obligación de prestar sustento a una persona de edad avanzada, o para nivelar dicha obligación, es necesario que se presente ante el Tribunal una petición de sustento ya sea el alimentista, por sí, o cualquier persona particular interesada en el sustento de dicho alimentista.
Por otro lado, la Ley 168, supra, dispone que un alimentante adulto que ya esté proveyendo sustento a un ascendiente de edad avanzada podrá presentar ante el tribunal una solicitud para que se ordene a otros alimentantes obligados a proveer sustento al alimentista. En estos casos, se utilizará la nivelación como medio de distribuir equitativamente la obligación de sustento entre todos los obligados.
A los fines de determinar una aportación justa y razonable —y para distribuir equitativamente la obligación de proveer sustento a una persona de edad avanzada — , se tomará en consideración la necesidad del alimentista y la capacidad de la parte alimentante para proveer el sustento. Además, se tomarán en consideración factores no monetarios como la compañía, cuidados y servicios que brinden los descendientes a las personas de edad avanzada, entre otros, y que necesiten ser provistos o deban ser provistos por sus descendientes alimentantes. También podrá considerarse la prudencia y razonabilidad con que el alimentista ha manejado sus asuntos financieros. Art. 4 de la Ley 168, supra.
El Art. 4 de la Ley 168, supra, también establece que los siguientes factores se considerarán al fijar, modificar, nivelar o dejar sin efecto la obligación de proveer sustento a las personas de edad avanzada:

“1. Los recursos económicos del alimentista y de los alimentantes;

2. la salud y necesidades físicas, mentales y emocionales de la parte alimentista;

3. el nivel de vida del alimentante;

4. las consecuencias contributivas para cada integrante de la parte alimentante, cuando ello sea práctico y pertinente;

5. las contribuciones no monetarias de cada parte alimentante al cuidado y bienestar del alimentista;

6. otras obligaciones alimentarias del alimentante;

7. estado de salud o condición de incapacidad mental o física del alimentante que le impida hacer aportaciones económicas;

8. evidencia de que el alimentante contra quien se reclaman alimentos, fue víctima de abandono, maltrato físico, emocional o sexual por parte del alimentista, o que éste incumplió con su obligación de prestar alimentos debidamente requerido mediante orden emitida por un tribunal competente a sus descendientes cuando eran menores de edad. ”

En aquellos casos en que se demuestre que el alimentante no puede proveer asistencia económica al alimentista, se le podrá ordenar como forma alternativa de pago el hacer aportaciones no económicas, tales como realizar tareas en el hogar, hacer las compras de artículos de uso del alimentista, acompañarle a hacer gestiones personales o atender sus necesidades de salud, entre, otras, tomando en consideración las circunstancias del caso. Art. 4 de la Ley 168, supra. .
*748 En este caso, José, Onelia y Teresita aducen que el Tribunal de Primera Instancia se equivocó al determinar que los cuatros hijos de la señora Chávez Toledo debían pagar la pensión de su señora madre por partes iguales. Señalan que ello se debe a que la prueba demostró que Nancy tiene una capacidad económica muy superior a la de sus hermanos. Ésta, por su parte, alega que, en todo caso, a ella no le correspondía aportar al pago de la referida pensión porque había sido abandonada por su madre desde muy pequeña. No tienen razón los apelantes.
El Tribunal de Primera Instancia tiene la oportunidad de observar la forma de hablar, el comportamiento, las explicaciones, los gestos, ademanes y demás detalles perceptibles del testimonio de un testigo que resultan esenciales para aquilatar adecuadamente la sinceridad de éste. Por ello, es el juzgador de los hechos en instancia quien, de ordinario, está en mejor posición para aquilatar la prueba testifical. Pueblo v. Chévere Heredia, 139 D.P.R. 1 (1995). A menos que exista pasión, prejuicio, parcialidad o error manifiesto en la determinación del referido foro, debemos abstenernos de intervenir con la apreciación de la evidencia hecha por el Tribunal de Primera Instancia. Ramos v. Wal-Mart, 168 D.P.R. _ (2006), 2006 J.T.S. 106.
Como habíamos dicho, en el caso que atendemos, el foro apelado no erró al resolver que la señora Chávez Toledo tiene derecho a recibir una pensión alimentaria por parte de sus hijos, incluyendo a Nancy. Según declaraciones de Doña Bertha Chávez Toledo —reiteradas por otros de los testigos que declararon en la vista, incluyendo a Nancy Hernández Chávez — , durante 13 años existió entre las partes una relación de madre e hija en la cual Nancy se ocupó de los gastos y cuidados de la señora Chávez Toledo e incluso la presentó en sociedad como su madre.
Según el récord, la apelada, no sólo recibía soporte económico por parte de su hija Nancy, si que también era invitada por ésta a las actividades que realizaba en su residencia, dónde era tratada como parte del clan familiar. Doña Bertha participó en fiestas de cumpleaños, graduaciones y otros eventos de la familia Levis Hernández como un miembro más de la familia. De hecho, Nancy acudió donde la apelante durante su proceso de divorcio, en busca de apoyo emocional durante ese momento tan difícil.
No hallamos indicios de pasión, prejuicio, parcialidad o error manifiesto en las determinaciones de hechos formuladas por el tribunal a quo. Éstas, sin duda alguna, apoyan la decisión de que entre Doña Bertha y Nancy ocurrió, en efecto, una reconciliación que subsanó el abandono de ésta última por parte de su señora madre, motivado por la precaria situación económica por la cual atravesaba en aquellos momentos Doña Bertha en Cuba. En consecuencia, debemos abstenernos de intervenir con ellas.
En cuanto a la alegación de que el tribunal de instancia debió asignarle a Nancy la obligación de aportar una cantidad mayor de dinero en el pago de la pensión alimentaria, resolvemos que tampoco tienen razón los apelantes. Del análisis realizado por la juez del T.P.I. que atendió este asunto, así como de todo cuanto surge del expediente ante nos, los ingresos de José, Teresita y Onelia son sustancialmente iguales y les permiten aportar $461.58 mensuales para la pensión alimentaria de su señora madre.
Teresita reportó gastos básicos mensuales ascendentes a $1,058.72 aproximadamente, e ingresos mensuales de $2,025. Además, desde el 22 de marzo de 2005 a octubre de 2005 depositó en su cuenta de banco cerca de $8,300. José, por su parte, trabajó en Doral Financial donde llegó a devengar hasta $3,000 mensuales. Posteriormente, fue dueño de dos restaurantes: La Bodeguita de Pepe y Los Frijoles Negros. Onelia, por su parte, reportó gastos mensuales ascendentes a $1,673.41 y llegó a devengar $48,544 al año trabajando en Doral Financial.
En cuanto a Nancy, debe tenerse en cuenta que durante los primeros 40 años de su vida se vio privada de recibir el calor y los cuidados de una madre, mientras que José, Teresita y Onelia sí se criaron con Doña Bertha y disfrutaron de su compañía en su hogar, rodeados por un ambiente familiar. Por tanto, aunque el Tribunal de *749 Primera Instancia no haya tenido ante sí evidencia de los ingresos reales que devenga Nancy, debido a que ésta aceptó su capacidad económica, no actuó irrazonablemente dicho foro al determinar que ella estaba obligada, cuanto menos, en igual proporción que sus otros hermanos, a aportar al sustento económico de la apelada. En vista de ello, resolvemos que el primer error señalado en el KLAN-08-00127, ni el primer error imputado en el KLAN080290, se cometieron.
Ahora bien, aun cuando nos parecen correctos los criterios en los cuales se basó el Tribunal de Primera Instancia para fijar la pensión alimentaria de Doña Bertha, existen unos señalamientos que debemos efectuar con relación a la forma en que debe computarse el retroactivo que se adeuda de la aludida pensión.
El Art. 28 de la Ley 168, 8 L.P.R.A. see. 736, dispone la forma en que se realizará el pago de una pensión alimentaria para personas de edad avanzada. Esa disposición legal establece que el pago de la pensión podrá hacerse, entre otros, del sueldo o salario; de otros ingresos, periódicos o no, recibidos por el alimentante de otras fuentes que no sean del producto de su trabajo, tales como rentas e intereses. Podrá también incluirse o imponerse en la pensión alimentaria, como forma alternativa de pago, el aporte no económico del alimentante.
Las partes, o el Tribunal, determinarán la forma en que los alimentantes obligados harán el pago de la aportación económica de la pensión alimentaria. Este se podrá hacer, sin que se entienda como una limitación, directamente al alimentista, a otro de los alimentantes, o mediante el depósito a una cuenta de banco.
Como se puede apreciar, la Ley 168, supra, no dispone la forma en que se computará la deuda de un retroactivo de pensión en casos de personas de edad avanzada al amparo del referido estatuto. Siendo así, conforme a los principios de equidad, así como la información que surge del récord ante nos, consideramos apropiado eliminar del cómputo efectuado por el T.P.I. algunas de las partidas incluidas por aquel foro. Veamos.
Del expediente surge que el Tribunal de Primera Instancia, al computar el retroactivo de la pensión, incluyó en su cálculo ciertas partidas que, si bien es cierto que resulta razonable tomarlas en cuenta para establecer el monto total de la pensión alimentaria, no es menos cierto que carece de sentido considerarlas para propósitos del cálculo de dicho retroactivo. Estas son las siguientes:

“ 1. Deducibles médicos - $200.00

2. Teléfono Celular - $50.00

3. Transportación - $150.00

4. Entretenimiento - $150.00

5. Salón de belleza - $50.00

6. Alimentos fuera del hogar - $100.00

7. Ropa - $75.00

8. Periódicos y revistas - $20.00

9. Gastos misceláneos - $100.00”

Considerado lo anterior, para propósitos del cómputo del retroactivo solamente, procede eliminar de éste *750 las partidas arriba mencionadas, las cuales ascienden a $895. Al restarle los $895 a los $2,390.34 correspondientes a la pensión alimentaria establecida por el tribunal a quo, nos queda un total de $1,495.34. A éstos, también habrá que restarle los $544 que constituyen la aportación mensual que efectúa el señor Salomón Levis a los gastos de su ex suegra, con lo cual queda reducido a $951.34 el pago mensual de pensión alimentaria que deberá ser la base para computar el retroactivo adeudado por sus hijos.
Por otro lado, existe prueba en el expediente de que la señora Chávez Toledo tenía ahorros, los cuales le proveyeron capacidad económica para cubrir sus necesidades hasta del mes de abril de 2006. Por consiguiente, procede computar la deuda del retroactivo a partir de ese mes y año, y no a partir de octubre de 2005 —cuando se presentó la petición de alimentos de epígrafe— según determinó el foro apelado en su dictamen. [2] Al considerar los $951.34 (correspondientes al cómputo de la pensión alimentaria mensual para efectos del cálculo del retroactivo) y los multiplicamos por 20 (la cantidad de meses en atraso de la pensión, desde mayo de 2006, hasta diciembre de 2007, cuando se dictó la sentencia apelada), tenemos un total de $19,026.80 que le toca recibir a Doña Bertha por concepto del retroactivo. A su vez, dicha cantidad deberá dividirse entre sus cuatro hijos, lo que resulta en un pago de $4,756.70 que le corresponde pagar a cada uno de los apelantes.
Debemos indicar que, según surge del récord, el Tribunal de Primera Instancia no tomó en cuenta, para fijar la aquí controvertida pensión, gastos médicos extraordinarios —adicionales al costo del seguro médico de Doña Bertha— ni costos de viajes a Cuba para ésta. De las páginas 36 y 37 de la sentencia apelada surge una disposición del tribunal de instancia consistente en que aquellos gastos de cirugías necesarios para preservar la salud de Doña Bertha serán prorrateados entre todos sus hijos, luego de que ésta presente la evidencia de rigor. Asimismo, le autorizó un viaje a Cuba cada tres años y su costo, igualmente, deberá ser sufragado, en partes iguales, por sus cuatro hijos. Véanse, págs. 387-388 del Apéndice del recurso KLAN-08-00290. No nos parece que tal disposición resulte patentemente irrazonable, por lo cual determinamos que el segundo error imputado en el KLAN-08-00290 tampoco se cometió.
En cuanto al planteamiento efectuado por José, Teresita y Onelia —relacionado a que el foro apelado debió permitir descubrimiento de prueba sobre la situación económica de su hermana Nancy — , resolvemos que no tienen razón.
Como es sabido, en Chévere v. Levis, 150 D.P.R. 525 (2000), el Tribunal Supremo resolvió que es la negativa a aceptar voluntariamente la capacidad económica para proveerle alimentos a los hijos menores de edad, o la existencia de duda en cuanto a ésta, la que activa el uso de los mecanismos dispuestos en la ley para descubrir la información relacionada a los ingresos del alimentante y así poder determinar la capacidad económica de éste. No obstante, cuando el alimentante admite su capacidad económica para proveer la pensión alimentaria, entonces no es necesario que divulguen sus ingresos. Chévere v. Levis, supra. En estos casos, basta con determinar cuáles son las necesidades del alimentista para así fijar la pensión alimentaria que corresponda.
Consideramos razonable aplicar a los casos de pensiones de personas de edad avanzada, por analogía, las normas establecidas para casos de sustento de menores. [3] Por tanto, ante la aceptación de la apelante en cuanto a su capacidad económica para aportar razonablemente al pago de la pensión alimentaria de Doña Bertha, resolvemos que no era necesario que se descubriera información adicional para determinar el alcance de dicha capacidad. En consecuencia, el segundo error invocado en el KLAN-08-00127 tampoco se cometió.
III
A tenor con los fundamentos que hemos consignado, se modifica la resolución recurrida a los únicos efectos de eliminar, sólo para propósitos del cómputo del retroactivo de la pensión alimentaria de Doña Bertha Chávez Toledo, las partidas correspondientes a gastos de deducibles médicos, transportación, *751 entretenimiento, celular, salón de belleza, alimentos fuera del hogar, revistas, ropa y misceláneos. Por tanto, a la señora Chávez Toledo le corresponde recibir $4,756.70 de cada uno de sus cuatro hijos residentes en Puerto Rico, para un total de $19,026.80 por concepto del referido retroactivo. Los restantes pronunciamientos de la sentencia apelada, quedan inalterados. Así modificada, confirmamos la sentencia emitida por el Tribunal de Primera Instancia.
Lo ordenó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
María Elena Pérez Ortiz Secretaria del Tribunal de Apelaciones
ESCOLIOS 2009 DTA 18

1. José, Onelia y Teresita acudieron ante nos mediante el recurso de apelación KLAN-08-00127, presentado el 25 de enero de 2008. Nancy hizo lo propio a través del KLAN-08-00290, presentado el 25 de febrero del mismo año. Mediante resolución emitida el 3 de abril de 2008, ordenamos la consolidación de ambos recursos.

2. Adviértase, además, que del récord surge que entre los meses de mayo a agosto de 2006, una de las nietas de Doña Bertha, la señora Joan Carriera, así como una prima de ésta, la señora Lina Álvarez, residieron con la alimentista y sufragaron entre las tres los gastos del hogar. Véase, pág. 9 de la sentencia apelada.

3. A estos efectos, la Exposición de Motivos de la Ley 168, supra, establece que el citado estatuto “tiene como objetivo establecer un mecanismo administrativo que atienda el sustento de personas de edad avanzada, paralelo a aquél que existe para beneficio de menores en Puerto Rico.’’ (Enfasis suplido.) De hecho, dicho mecanismo fue implementado y es administrado por la Administración para el Sustento de menores.