SENTENCIA
En este recurso se presenta la siguiente interrogante: ¿Se extiende automáticamente el efecto de una Resolución que ordena el pago de alimentos, expedida mientras el ali-mentista, ya mayor de edad, cursaba sus estudios de ba-chillerato a estudios posteriores de Juris Doctor? ¿Hace al-guna diferencia que el alimentista tomara un año libre antes de matricularse en la escuela de Derecho?
*290 J — I
El trasfondo procesal del caso se resume de la manera siguiente.
Poco antes del 24 de abril de 2002, fecha cuando su hijo Alberto A. Villafañe Rivera (recurrido) habría de cumplir 21 años de edad, el Sr. Alberto A. Villafañe González (peti-cionario) solicitó al tribunal de instancia el relevo de una pensión alimentaria tramitada, hasta ese entonces, por la madre de su hijo para beneficio del menor. En respuesta, el recurrido, ya mayor de edad, sometió urna Moción Recla-mando Derecho a Pensión Alimentaria por derecho propio. Como fundamento, indicó que en esos momentos cursaba su tercer año de bachillerato en la Universidad de Puerto Rico y que no contaba con los recursos necesarios para po-der finalizar sus estudios universitarios, a la vez que el peticionario tenía suficientes medios económicos. El foro primario refirió el asunto a la Examinadora de Pensiones Alimentarias y ordenó que, entre tanto, continuara en efecto la pensión vigente de $350 mensuales.
Luego de varios trámites procesales, el 10 de abril de 2003 el tribunal a quo celebró una vista donde el peticio-nario puso al día la deuda de las pensiones atrasadas. En lo atinente a la solicitud de alimentos del hijo, el juez a cargo del caso se limitó a ordenar lo siguiente:
A partir del mes de mayo 2003, el [peticionario] pagará $400 directo a su hijo.
El Tribunal ordena al joven que todos los comienzo [s] de semestre en 10 días se [r] emita [el] programa de clases que evidenci[e] que est[á] estudiando y cuando culmine el semes-tre 10 días para que evidencie el aprovechamiento académico. Minuta de 10 de abril de 2003, Apéndice del Certiorari, págs. 89-90.
El 11 de septiembre de 2009, transcurridos 6 años desde la concesión de alimentos aquí en controversia, el peticio-nario sometió una Moción Urgente Solicitando Aclaración *291 sobre Deuda de ASUME. Según alegó el peticionario, a esa fecha la cuenta con la Administración para el Sustento de Menores (ASuMe) reflejaba una deuda ascendente a $24,475, aunque en realidad no adeudaba nada. Solicitó, por lo tanto, la conciliación y cierre de la cuenta.
El peticionario se percató de la alegada deficiencia en ASuMe por unas dificultades que tuvo con una cantidad de dinero que el Departamento de Hacienda le adeudaba, así como por inconvenientes confrontados en sus gestiones ante otras agencias gubernamentales. Según explicó, su reintegro de contribuciones sobre ingresos correspondiente al 2008 le fue remitido a ASuMe, entidad que, a su vez, lo envió a la madre del recurrido. Certiorari, págs. 3-4.
En la moción arriba indicada, el recurrido se opuso a las pretensiones de su padre, argumentando que subsistía la deuda consignada por ASuMe ya que, una vez concluidos sus estudios universitarios, había comenzado, inmediata-mente, sus estudios en Derecho a tiempo completo hasta obtener, en el término de 3 años, el grado de Juris Doctor. Indicó además que, durante ese tiempo, tuvo la necesidad de recibir alimentos y el peticionario contaba con la capa-cidad económica para pagarlos. De igual forma, planteó que su padre nunca solicitó el relevo de la pensión alimen-taria impuesta en el año 2003. Moción en oposición a soli-citud de cancelación de deuda y solicitando el pago de deuda por concepto de alimentos, pág. 94.
A pesar de la oposición oportuna del recurrido, el 13 de noviembre de 2009 el foro primario dispuso el cierre de la cuenta en ASuMe “sin deuda y relevo de pensión”.
Ambas partes presentaron una serie de mociones y ré-plicas, cada cual afianzándose a su posición original. Entre estas se destacan una moción de reconsideración sometida por el recurrido el 30 de noviembre de 2009, afirmando que persistía la deuda, así como una solicitud de desacato de 21 de diciembre de 2009 fundamentada en el alegado incum-plimiento de pago.
*292 El 7 de junio de 2010 el tribunal de instancia declaró “no ha lugar” la moción de reconsideración. No obstante, se-ñaló una vista para dilucidar el planteamiento de desacato instado por el recurrido. En la vista celebrada el 30 de junio de 2010 se ordenó al recurrido que presentara evi-dencia de que había continuado sus estudios universitarios ininterrumpidamente hasta mayo 2004, así como las transcripciones de crédito correspondientes.
Conforme le fuese ordenado por el tribunal, el recurrido sometió las transcripciones de crédito de la Universidad de Puerto Rico, así como la certificación oficial de su grado de Bachiller en Artes obtenido el 5 de junio de 2004. También acompañó copia de su transcripción académica acredita-tiva de haber comenzado sus estudios en Derecho en agosto de 2005 y obtenido su grado de juris doctor en mayo de 2008.
Transcurridos una serie de eventos procesales, el tribunal a quo celebró una vista el 7 de septiembre de 2010, donde testificaron tanto el peticionario como el recurrido representados por sus respectivos abogados. También se sometió prueba documental relacionada con los exámenes de admisión a la escuela de Derecho tomados por el recu-rrido, certificación del grado obtenido, trascripción de cré-ditos, tanto a nivel de bachillerato como de postgrado, y copias de giros postales del peticionario.
A base de ello, el 4 de octubre de 2010 el Tribunal de Primera Instancia dictó una Resolución en la que decretó “No Ha Lugar la solicitud presentada por el alimentista”. Apéndice del Certiorari, pág. 204. Advirtió que éste había interrumpido sus estudios luego de concluir su bachillerato. Señaló que no se presentó evidencia de gastos por ninguna de las partes. Tampoco se demostró, de ma-nera fehaciente, la necesidad de ayuda financiera del recu-rrido durante sus estudios en Derecho ni la capacidad eco-nómica de su padre para este periodo.
*293 Inconforme, el recurrido apeló el referido dictamen al Tribunal de Apelaciones, el cual emitió una Sentencia re-vocando al tribunal primario.(1) El foro apelativo interme-dio concluyó que la pensión fijada en el 2003 continuó vi-gente durante todo el periodo de los estudios en Derecho del recurrido, independientemente del interludio de un año que le tomó prepararse para retomar el examen de ingreso. Razonó que, a base de lo resuelto en Valencia, Ex parte, 116 D.RR. 909 (1986), recaía sobre el padre la responsabilidad de acudir al tribunal a pedir el relevo de pensión, puesto que no se mostró excepción alguna para la dispensa de la obligación de prestar alimentos con efecto retroactivo.
Ante la presentación de este recurso junto a una moción en auxilio de jurisdicción del peticionario, el 17 de junio de 2011 emitimos Resolución expidiendo el auto de certiorari solicitado. Al haber sometido ambas partes sus respectivos alegatos, resolvemos.
II
“Ni la emancipación ni la mayoría de edad de los hijos relevan al padre de su obligación de alimentarles si aque-llos lo necesitaren”. Sosa Rodríguez v. Rivas Sariego, 105 D.P.R. 518, 523 (1976). En ocasiones anteriores hemos aclarado que el deber de proveer alimentos a hijos menores surge de diferente estirpe que la correspondiente exigencia frente a hijos mayores de edad. Fonseca Zayas v. Rodríguez Meléndez, 180 D.P.R. 623 (2011); Rodríguez Amadeo v. Santiago Torres, 133 D.P.R. 785 (1993).
La obligación de los progenitores de proveer alimentos a sus hijos menores de edad es parte esencial del derecho a la vida consagrado en la Sección 7 del Artículo II de la Constitución de Puerto Rico, L.P.R.A., Tomo 1. Fonseca Za *294 yas v. Rodríguez Meléndez, supra; Torres Rodríguez v. Carrasquilla Nieves, 177 D.P.R. 728 (2009). El deber de brin-darles alimentos surge de la relación paterno-filial que se origina cuando la paternidad o maternidad quedan esta-blecidas legalmente. Id. Dicha responsabilidad no se reduce únicamente a un deber moral proveniente de su con-dición de progenitor, sino que se encuentra plasmada igualmente en nuestro ordenamiento(2) Fonseca Zayas v. Rodríguez Meléndez, supra; Rodríguez Amadeo v. Santiago Torres, supra; Torres Rodríguez v. Carrasquillo Nieves, supra; McConnell v. Palau, 161 D.P.R. 734 (2004).
En lo concerniente a los hijos mayores de edad, emanci-pados o no sujetos a la patria potestad y custodia de uno de sus padres, la obligación de proporcionar alimentos emana del Artículo 143 del Código Civil, 31 L.P.R.A. sec. 562, donde se consigna el deber general de los parientes de so-correrse mutuamente. Key Nieves v. Oyóla Nieves, 116 D.P.R. 261 (1985).
Los contornos atinentes a las obligaciones alimentarias están delineados por los Artículos 142 al 151 del Código Civil, 31 L.P.R.A. secs. 561-570. Según la definición allí provista, los alimentos comprenden no solo aquellas nece-sidades básicas para el sustento del alimentista, sino tam-bién su educación mientras este sea menor de edad. Artículo 142 del Código Civil, 31 L.P.R.A. sec. 561.
No obstante la limitación concerniente a la edad fijada por dicho esquema normativo, la obligación de sufragar los estudios de un hijo no cesa automáticamente cuando éste adviene a su mayoría de edad. Así pues, hemos resuelto jurisprudencialmente que en aquellos casos en que el ali-mentista haya iniciado sus estudios universitarios a nivel *295 de bachillerato durante su minoría de edad, como regla general, tendrá derecho a exigir de sus progenitores que le provean los medios necesarios para concluir dicha etapa educativa, aun luego de haber llegado a la mayoridad. Argüello v. Argüello, 155 D.P.R. 62 (2001); Rodríguez Amadeo v. Santiago Torres, supra; Key Nieves v. Oyóla Nieves, supra.
A través de este enfoque, hemos reconocido que “la per-cepción de que los estudios universitarios constituyen un ‘lujo’ es cosa del pasado; dichos estudios se han convertido en una necesidad”. Key Nieves v. Oyóla Nieves, supra, pág. 266.
Por otra parte, la obligación alimentaria necesaria-mente varía cuando se trata de alguien quien, ya siendo mayor de edad, interesa iniciar estudios postgraduados. Este tipo de reclamación conlleva un análisis basado en consideraciones diferentes que exigen ser evaluadas indi-vidualmente conforme a los hechos que se presenten en cada caso. Argüello v. Argüello, supra.
A esos efectos, hemos expresado lo siguiente:
La situación particular que representan los estudios post-graduados, como maestrías o doctorados, y el estudio de aque-llas profesiones que requieren en exceso de los cuatro años de bachillerato amerita una consideración especial y separada que, como regla general, tendrá que ser resuelta de acuerdo a los hechos particulares de cada caso. (Escolio omitido). Key Nieves v. Oyóla Nieves, supra, págs. 266-267.
Claro está, para ser merecedor de estos beneficios es indispensable demostrar aptitud para los estudios, a la par que aprovechamiento académico. El Código Civil no visua-liza una obligación alimentaria frente a un alimentista quien, a pesar de su preparación, opta por no ocuparse provechosamente, sino que en su lugar prefiere la ociosidad. Rodríguez Amadeo v. Santiago Torres, supra. También hemos indicado que:
[E]l hijo que solicite “alimentos” o asistencia económica para *296 estudios “postgraduados” deberá demostrar afirmativamente que es acreedor de tal asistencia económica mediante la acti-tud demostrada por los esfuerzos realizados, la aptitud mani-festada para los estudios que desea proseguir a base de los resultados académicos obtenidos, y la razonabilidad del obje-tivo deseado. (Énfasis en el original y escolio omitido). Key Nieves v. Oyóla Nieves, supra, pág. 267.
Lo anterior está condicionado, por supuesto, a que el alimentista demuestre, tanto su necesidad económica, como la capacidad de pago del alimentante conforme el principio de proporcionalidad pautado por el Artículo 146 del Código Civil, 31 L.P.R.A. sec. 565. Argüello v. Argüello, supra; Chévere v. Levis, 150 D.P.R. 525 (2000); Rodríguez Amadeo v. Santiago Torres, supra.
Y es que, en lo atinente a la cuantía de la pensión a adjudicarse, la suma que corresponde pagar deberá ser proporcional a los recursos de quien los da y a las necesi-dades de quien los recibe, y se reducirá o áumentará en proporción a los recursos del primero y las necesidades del segundo. Fonseca Zayas v. Rodríguez Meléndez, supra; Martínez v. Rodríguez, 160 D.P.R. 145 (2003); Argüello v. Argüello, supra.
El Artículo 147 del Código Civil, según enmendado, 31 L.P.R.A. sec. 566, dictamina que la obligación de sufragar alimentos surge desde el momento cuando se reclama judi-cialmente su pago.(3) Chévere v. Levis, supra.
En cuanto a rebajas o relevo de pensión, como regla general, su efectividad será prospectiva y coincidirá con la fecha cuando se resuelva que proceden. No obstante, el tribunal primario tiene la facultad de ordenar que su dicta-men se retrotraiga a la fecha cuando formalmente se le solicitó tal remedio, siempre y cuando las circunstancias del caso así lo ameriten. Valencia, Ex parte, supra. En lo *297 relativo a pensiones alimentarias devengadas previo a este tipo de solicitud, no debe intervenirse con ellas. Estas po-drán reducirse o dejarse sin efecto por vía de excepción y únicamente en aquellas situaciones extremas en que el ali-mentante pueda probar a satisfacción del tribunal, no so-lamente los méritos de la rebaja que se interesa, sino tam-bién “que por razón de una enfermedad o accidente de índole incapacitante estuvo realmente imposibilitado de radicar a tiempo la moción de rebaja correspondiente”. Valencia, Ex parte, supra, págs. 916-917.
Ya delineada la normativa aplicable, pasamos a diluci-dar los méritos del planteamiento medular del recurso, es decir, si la pensión fijada en el 2003 se extendió hasta que el recurrido concluyó sus estudios de juris doctor.
hH hH hH
Al enfocar en las circunstancias particulares del pre-sente recurso, de entrada notamos que no consta evidencia alguna en autos que denote que el dictamen del tribunal de instancia de 10 de abril de 2003 concierne a obligaciones alimentarias más allá de los 4 años de bachillerato del recurrido. Por el contrario, dicha Resolución respondió es-pecíficamente a la solicitud de ayuda económica sometida por el recurrido para poder concluir los estudios que prose-guía para aquel entonces. Nada se dispone, ni en su peti-torio ni en la correspondiente determinación judicial emi-tida por el foro primario, para estudios posteriores una vez finalizado el grado universitario(4) En este respecto, la obligación impuesta al peticionario de ayudar a su hijo está claramente fundamentada en lo decretado en Key Nieves v. Oyóla Nieves, supra, pág. 267, donde reconocimos el rol vital que ostenta un diploma de bachillerato en la so-ciedad moderna.
*298 De igual forma, según indicáramos anteriormente, para que surja la obligación de financiar estudios de postgrado, forzosamente se requieren unos trámites adicionales por parte del alimentista. Sobre éste recae el deber y, por lo tanto, el peso de probar los méritos de su pretensión. Es decir, demostrar su aptitud y aprovechamiento académico que justifiquen obligar al padre a costear su carrera ambicionada. También le toca convencer al tribunal de que sus objetivos de estudios adicionales son razonables dentro de las circunstancias fácticas vigentes. Por último, es me-nester que acredite, mediante evidencia creíble al juzga-dor, tanto su necesidad económica como la capacidad de pago del alimentante lo suficiente como para ordenarle a éste continuar aportando a su gestión educativa.
En este caso, la solicitud interpuesta por el recurrido al advenir a la mayoría de edad se circunscribió a su deseo de “finalizar sus estudios universitarios”, los cuales para aquel entonces se delimitaban a un bachillerato. Todo in-dica, por lo tanto, que esto fue lo único que tuvo ante su consideración el tribunal a quo y, por ende, lo que ineludi-blemente dispuso en su dictamen. Como consecuencia, la efectividad de la Resolución concernida necesariamente cesó una vez el recurrido completó sus 4 años en la Univer-sidad de Puerto Rico y detuvo sus estudios formales. Ello es así puesto que, al cumplirse con aquello que dio origen a la orden de pago de alimentos, se extinguió su razón de ser.
Por ello, no existía fundamento para que el peticionario acudiera al tribunal y solicitara el relevo de pensión una vez tramitado el pago correspondiente al último mes del bachillerato del recurrido. Es un principio reconocido que la pensión se hace innecesaria una vez cesa la necesidad del alimentista.
Nos parece loable el que, a pesar de las adversidades confrontadas y haber fracasado en su primer intento en el examen de admisión a la escuela de Derecho, el recurrido *299 se haya aplicado con tesón para lograr iniciar sus estudios conducentes a un juris doctor, así como graduarse dentro de un periodo de 3 años, Magna Cum Laude, a base de préstamos y del sacrificio de su señora madre. Sin embargo, no por ello podemos obviar las claras disposiciones estatutarias, al igual de lo consistentemente plasmado so-bre esta materia en nuestra jurisprudencia.
En el caso ante nos, luego de un breve interludio, el recurrido prosiguió sus estudios en Derecho de manera in-dependiente y nunca le reclamó los gastos a su padre. No fue sino hasta que surgió el debate por la alegada deuda de ASuMe que el recurrido mostró interés en recibir alimen-tos de éste subsiguientes a su graduación universitaria. Así como acudió al tribunal en el 2003, correspondía al recurrido regresar al foro judicial, esta vez para justificar la continuidad de las ayudas de su padre por un periodo de estudios adicional. Conforme lo decretado en Key Nieves v. Oyóla Nieves, supra, y su progenie, en la concesión de ali-mentos para estudios postgraduados los criterios a ser con-siderados por el tribunal tienen unas particularidades pro-pias y el peso de probarlas le incumbe a quien los solicita.
Advertimos que no debe interpretarse nuestra decisión como una aprobación a la interrupción ex parte del pago de pensiones que de alguna manera incidan en asuntos rela-cionados con hijos menores de edad ni la obligación de su-fragar estudios universitarios conforme la jurisprudencia aquí citada. La obligación alimentaria en los casos de me-nores está revestida del más alto interés público. En aras de salvaguardar su bienestar, no le es permitido a un ali-mentante terminar por cuenta propia sus obligaciones se-gún impuestas por orden judicial. En contraste, la respon-sabilidad de financiar estudios postgraduados de los hijos mayores de edad, preceptuada en el Artículo 143 del Có-digo Civil, supra, está claramente fundamentada en consi- *300 deraciones de otra naturaleza y le exige al propio alimen-tista una carga probatoria diferente.
Al atender los méritos de este caso, somos conscientes que la situación económica actual en muchas ocasiones re-quiere de una preparación académica a nivel de postgrado para hacer viable la entrada al mercado laboral. La reduc-ción en el número de empleos acentúa el rol de la educa-ción como factor determinante de la competitividad individual en función de las pocas plazas de trabajo disponibles. No obstante, nos encontramos ante una situación que in-volucra a un adulto quien ya ha obtenido su diploma uni-versitario y es capaz de velar y abogar por sus propios in-tereses educativos.
Erró, por lo tanto, el tribunal apelativo intermedio al concluir que la pensión fijada en el 2003 continuó vigente aun después que el recurrido completara sus estudios de bachillerato. Ello equivaldría a premiar el que un alimen-tista decidiese estudiar carreras a nivel de postgrado inde-finidamente, mientras que el padre —desconociendo tales planes— esté obligado a continuar sufragando los estudios hasta tanto acuda al tribunal a solicitar el cese de la pensión.
Dadas las circunstancias existentes en este caso, no ve-mos razón de peso para imponer la obligación al padre ali-mentante de recurrir al tribunal y no a su hijo adulto.
IV
A base de lo anteriormente expuesto, se revoca la Sen-tencia emitida por el Tribunal de Apelaciones el 28 de abril de 2011 y se reinstala en su lugar el dictamen del Tribunal de Primera Instancia de 4 de octubre de 2010.
Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal Supremo. La Juez Asociada Señora Rodríguez Rodrí-guez disintió con una opinión escrita, a la cual se unió el *301 Juez Asociado Señor Estrella Martínez. El Juez Asociado Señor Martínez Torres disintió haciendo constar que disiente
... por entender que lo fundamental en este caso es que es-taba en vigor una orden judicial al padre para pagar alimentos a su hijo mayor de edad, mientras este último estudiara. La obligación de alimentar a los hijos mayores de edad surge como una excepción del Art. 146 del Código Civil, 31 L.P.R.A. sec. 565. Key Nieves v. Oyóla Nieves, 116 D.P.R. 261 (1985). Ahora bien, una vez el hijo demuestra la capacidad de pago del progenitor alimentante así como la necesidad de la pensión y el tribunal la impone, el padre no puede adjudicarse el poder de decidir cuándo cesa de ser necesaria esa pensión. Lo co-rrecto es que, cuando entienda que no lo es, acuda de inme-diato al tribunal a solicitar que la deje sin vigor (con efecto retroactivo, de ser ello necesario), a menos que por una situa-ción extraordinaria el alimentante estuviera realmente impo-sibilitado de acudir al tribunal. Valencia, Ex parte, 116 D.P.R. 909, 916 (1986). Lo contrario sería conceder al alimentante el poder de decidir a su entera voluntad la necesidad, la duración y el monto de la pensión. Esa función le compete al tribunal, quien deberá seguir las normas del Código Civil, las leyes es-peciales de alimentos y nuestra jurisprudencia. Por encima del capricho de cualquier alimentante, es el juicio del tribunal el que debe decidir el cese de una pensión alimentaria. Si no se permiten “descuentos hechos a voluntad del alimentante”, Guadalupe Viera v. Morell, 115 D.P.R. 4, 16 (1983), mucho menos se puede permitir dejar sin efecto unilateralmente la pensión que el tribunal impuso, pues ese es el descuento más grande posible, el que reduce la pensión a cero.
Los Jueces Asociados Señores Kolthoff Caraballo y Es-trella Martínez disintieron sin opiniones escritas y se unie-ron a lo expresado por el Juez Asociado Señor Martínez Torres, según arriba indicado.
(Fdo.) Aida Ileana Oquendo Graulau

Secretaria del Tribunal Supremo

 El Hon. Misael Ramos Torres, Juez de Apelaciones, disintió con una opinión escrita.

 Véase, por ejemplo, el Artículo 118 del Código Civil, 31 L.P.R.A. sec. 466, donde se reconoce a los hijos el derecho a recibir alimentos, mientras que su Artículo 153 (31 L.P.R.A. sec. 601), expresamente impone a los padres, como parte del ejerci-cio de la patria potestad sobre sus hijos menores o no emancipados, la obligación de alimentarlos y educarlos. Por su parte, el Artículo 143 del Código Civil, 31 L.P.R.A. sec. 562, exige a los parientes proveerse alimentos recíprocamente.

 En lo pertinente, el Artículo 147 del Código Civil dispone lo siguiente: “La obligación de dar alimentos será exigible desde que los necesitare para subsistir la persona que tuviere derecho a percibirlos; pero no se abonarán sino desde la fecha en que se interponga la demanda”. 31 L.P.R.A. sec. 566.

 De hecho, el peticionario cumplió a cabalidad con el pago hasta que su hijo se graduó de bachillerato.