ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| AILEEN GARCED MUÑOZ<br><br>Parte Recurrida<br><br>v.<br><br>FELIPE JAVIER HERNÁNDEZ RIVERA<br><br>Parte Peticionaria | KLAN202500406 | *Apelación* **acogida como** *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.: CG2024RF00622<br><br>Sobre: Alimentos |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero y el Juez Campos Pérez

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 17 de junio de 2025.

Comparece el Sr. Felipe Hernández Rivera, demandado y peticionario, mediante un recurso de *certiorari*.[1] Solicita nuestra intervención para revocar cinco *Órdenes* emitidas y notificadas el 7 de abril de 2025, por el Tribunal de Primera Instancia, Sala Superior de Caguas (TPI). En esencia, los cinco pronunciamientos judiciales desautorizaron el retiro de la alegación de capacidad económica realizada por el compareciente.

Anticipamos la expedición del auto discrecional y la revocación de las decisiones impugnadas.

**I.**

La presente causa se inició el 6 de septiembre de 2024, ocasión en que la Sra. Aileen Garced Muñoz, demandante y recurrida, instó una *Demanda* de divorcio por ruptura irreparable.[2]

---

[1] En vista de que se recurre de unas *Órdenes* emitidas de manera interlocutoria por el foro *a quo*, acogemos el presente recurso como un auto de *certiorari*, pero conservamos la misma clasificación alfanumérica, en observancia a una solución justa, rápida y económica.

[2] Entrada 1 del expediente electrónico del Sistema Unificado de Manejo y Administración de Casos (SUMAC). La pareja contrajo nupcias el 18 de julio de 2009, bajo separación de bienes, según estipulado en la escritura pública 53 de 11 de julio de 2009, *Capitulaciones Matrimoniales*.

Número Identificador

SEN2025_____

Luego, presentó *Demanda Enmendada*.[3] Entre otros reclamos, la demandante solicitó la custodia monoparental del hijo en común, E.J.H.G. de 11 años, y el establecimiento de una pensión alimentaria conforme con la capacidad económica del demandado y las necesidades del menor.

Por su parte, el 4 de noviembre de 2024, el señor Hernández Rivera presentó su alegación responsiva y reconvino.[4] En lo que nos atañe, aceptó que la custodia fuera monoparental y coincidió con que el asunto de la pensión fuera referido a la Examinadora de Pensiones Alimentarias (EPA). A tales efectos, el TPI ya había ordenado la comparecencia de ambas partes para una vista ante la EPA a celebrarse el 10 de octubre de 2024.[5]

Surge del expediente que el demandado no compareció a la vista de la EPA. En torno a esto, la representación legal de entonces había solicitado la transferencia de la audiencia por conflictos de calendario y sugirió fechas alternas.[6] Aun cuando el TPI refirió el asunto de la transferencia a la EPA,[7] ésta nada se expresó sobre un nuevo señalamiento.[8] En su lugar, en ausencia del demandado, la EPA computó una pensión alimentaria provisional de $2,215.00 mensuales. **El monto se obtuvo a base de las guías reglamentarias, toda vez que al señor Hernández Rivera se le imputó un ingreso de $10,000.00 mensuales, a base de los dichos de la demandante**.[9] El 13 de noviembre de 2024, el TPI

---

[3] Apéndice de la parte recurrida, págs. 21; 22-27.

[4] Entrada 34 del SUMAC. Véase, *Réplica a Reconvención* en la entrada 51 del SUMAC.

[5] Apéndice de la parte recurrida, pág. 20 y entradas 3 y 4 del SUMAC.

[6] Apéndice de la parte recurrida, págs. 28-30. La demandante se opuso; véase, Apéndice de la parte recurrida, págs. 31-33.

[7] Entrada 21 del SUMAC.

[8] Del expediente surge que, durante la vista, la EPA indicó que por la naturaleza de la audiencia no la iba a transferir, pero el demandado asegura que no fue notificado por ésta. Véase, Apéndice de la parte recurrida, págs. 13-14, acápites 22-23.

[9] Apéndice de la parte peticionaria, págs. 7-8. Véase, además, Apéndice de la parte recurrida, pág. 14, acápite 25.

notificó la *Resolución y Orden* por la cual impuso de manera provisional al señor Hernández Rivera la cuantía aludida, más el pago del 73% de los gastos escolares. El demandado también provee el plan médico del menor.[10]

Iniciado el procedimiento de descubrimiento de prueba, en aras de tomar una decisión informada[11] y en cumplimiento del plazo expedito de diez días mediante *Orden*,[12] **el señor Hernández Rivera expresó que asumiría capacidad económica el 16 de diciembre de 2024**.[13] Al día siguiente, el TPI decretó el divorcio mediante la correspondiente *Sentencia.*[14]

Con relación a la aceptación de capacidad económica, el señor Hernández Rivera indicó su interés en que la pensión alimentaria reflejara la realidad de las necesidades económicas razonables de su hijo, por lo que se proponía deponer a la señora Garced Muñoz.[15] Sin embargo, al 5 de febrero de 2025, esencialmente debido a la resistencia de la demandante, ni siquiera se había informado una fecha para la deposición.[16] En idéntica fecha, el TPI finiquitó el descubrimiento de prueba y sostuvo la celebración de las vistas ante la EPA.[17]

---

[10] Apéndice de la parte peticionaria, pág. 6. Cabe señalar que las relaciones paterno-filiales fueron restablecidas en fines de semana alternos. Ello así, luego que se expidiera la Orden de Protección OPA-2024-048707 en contra del señor Hernández Rivera y a favor de la señora Garced Muñoz, desde el 18 de octubre de 2024 al 18 de abril de 2025. En este proceso, ésta alegó que el demandado le profirió palabras soeces e insultos que, a juicio del *nisi prius*, constituyeron un patrón de maltrato emocional. Véase, Apéndice de la parte recurrida, pág. 35 y Exhibit 2 del Anejo 1 en el Apéndice de la *Urgente oposición a "Moción en auxilio de jurisdicción y en solicitud de suspensión y/o paralización de los procedimientos de adjudicación de pensión alimentaria permanente" y en solicitud de desestimación al amparo de la Regla 83 del Reglamento del Tribunal de Apelaciones"*.

[11] Véase, Apéndice de la parte recurrida, págs. 7-8.

[12] Apéndice de la parte recurrida, pág. 9.

[13] Apéndice de la parte recurrida, págs. 10-19; en particular acápites 29-31.

[14] Notificada el 24 de enero de 2025. Apéndice de la parte recurrida, págs. 43-44; además, entrada 90, *Minuta.*

[15] Apéndice de la parte recurrida, pág. 15, acápite 32.

[16] Entrada 126 del SUMAC; refiérase también a las entradas 106, 109, 111, 113, 117-118, 123.

[17] Apéndice de la *Urgente oposición a "Moción en auxilio de jurisdicción…"*, Anejo 9 y Apéndice de la parte recurrida, pág. 45.

El 10 de febrero de 2025 tuvo lugar la vista de fijación de pensión final,[18] la cual quedó inconclusa, pues no se evaluaron todos los gastos del menor.[19] La EPA consideró la aceptación de capacidad económica del demandado. A base de ello, informó a las partes la cuantía total de alimentos si prevalecían los reclamos de la demandante y el monto de pensión, en caso de que las alegaciones del demandado primaran. Señaló una nueva audiencia para el 7 de abril de 2025.

Así las cosas, el 19 de febrero de 2025, las abogadas del señor Hernández Rivera solicitaron el **relevo de representación legal por diferencias irreconciliables de criterio**.[20] El TPI prestó su anuencia a la renuncia; así como a la aceptación de la nueva representación legal. Apuntó que la vista de alimentos había comenzado.[21]

El 7 de abril de 2025, el señor Hernández Rivera presentó un escrito judicial, mediane el cual comunicó su intención de **retirar la alegación de capacidad económica**.[22] Su interés era que se procediese a adjudicar la pensión final de conformidad con las guías mandatorias. Ello así, toda vez que no conocía de las implicaciones que acarreaba la alegación realizada, puesto que no recibió asesoría legal correcta. Además, planteó que **no existía una determinación final de alimentos**, así como que presentaría las planillas contributivas del trienio precedente. A esos efectos, solicitó la reapertura del descubrimiento de prueba. En la misma fecha, peticionó la paralización de los procedimientos ante la EPA.[23]

---

[18] Apéndice de la parte recurrida, pág. 40.
[19] Apéndice de la parte peticionaria, pág. 9.
[20] Apéndice de la parte recurrida, págs. 47-48.
[21] Entradas 157, 160 y 162 del SUMAC.
[22] Apéndice de la parte peticionaria, págs. 53-57.
[23] Apéndice de la parte recurrida, págs. 58-59.

La señora Garced Muñoz se opuso a ambas solicitudes.[24] Arguyó que el proceso ya había dado inicio y que la petición constituía una *vil afrenta al bienestar del menor,* por lo que solicitó la imposición de honorarios por temeridad. Entre sus fundamentos, aludió a jurisprudencia en cuyos casos ya existía el decreto de una pensión final.

En respuesta, el 7 de abril de 2025, el TPI emitió y notificó los cinco pronunciamientos recurridos. Aun cuando en primera instancia el TPI refirió a la EPA la solicitud de retiro de capacidad económica [182],[25] luego sostuvo la aceptación. Esbozó que ambas partes comparecieron con representación legal y que la vista había comenzado [183-184].[26] Por igual, denegó la paralización de los procedimientos y ordenó la continuación de la vista [185-186].[27]

Por su insatisfacción, el señor Hernández Rivera acudió oportunamente ante nos y señaló los siguientes errores:

*Primer Error*
*Cometió error el Tribunal de [Primera] Instancia al no declarar con lugar el retiro de la aceptación de capacidad económica.*

*Segundo Error*
*Erró el Tribunal de [Primera] Instancia al mantener la aceptación de capacidad económica de un proceso ante la EPA que no ha culminado y tampoco existe una determinación final toda vez la única determinación sobre la pensión alimentaria es una provisional.*

*Tercer Error*
*Erró el Tribunal de [Primera] Instancia al no tomar en consideración las razones por las cuales el señor Hernández Rivera no tuvo un consentimiento informado sobre las consecuencias de inaceptación de capacidad económica razón por la cual sus representantes legales solicitaron el relevo de la representación legal.*

El 9 de mayo de 2025, concedimos a la señora Garced Muñoz un plazo de treinta días para presentar su postura. Pendiente el

---

[24] Apéndice de la parte recurrida, págs. 60-67 y Apéndice de la *Urgente oposición a "Moción en auxilio de jurisdicción…",* Anejo 3.
[25] Apéndice de la parte peticionaria, pág. 1.
[26] Apéndice de la parte peticionaria, págs. 2-3.
[27] Apéndice de la parte peticionaria, págs. 4-5.

trámite, el 15 de mayo de 2025, el peticionario presentó una moción en la que invocó nuestro auxilio de jurisdicción. En síntesis, indicó que estaba pautada una vista ante la EPA el 28 de mayo de 2025 a la 1:30 p.m., bajo el precepto de su aceptación de capacidad económica. A tales fines, solicitó la paralización de los procedimientos. El 21 de mayo de 2025, emitimos una *Resolución* en la que declaramos *Ha Lugar* el petitorio. Aclaramos que se mantenía incólume la pensión alimentaria provisional.

La parte recurrida compareció el 22 de mayo de 2025, mediante *Urgente oposición a "Moción en auxilio de jurisdicción y en solicitud de suspensión y/o paralización de los procedimientos de adjudicación de pensión alimentaria permanente" y en solicitud de desestimación al amparo de la Regla 83 del Reglamento del Tribunal de Apelaciones*. Elaboró sus contenciones en cuanto a la paralización ya decretada y solicitó la desestimación del recurso porque el peticionario omitió anejar importantes documentos. En atención a lo anterior, dictamos la *Resolución* de 23 de mayo de 2025. Respondimos que no teníamos nada que proveer y nos remitimos a nuestra previa determinación.

Finalmente, el 9 de junio de 2025, la señora Garced Muñoz presentó *Alegato en Oposición*. Con el beneficio de su comparecencia y de la regrabación de la vista celebrada el 10 de febrero de 2025, estamos en posición de resolver.[28]

**II.**

**A.**

El auto de *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones judiciales de un foro inferior y corregir algún error cometido por éste. *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *IG Builders et al., v.*

---

[28] Véase, Apéndice de la parte recurrida, pág. 67a (Cederrón 2:29:26). Además, Apéndice de la parte recurrida, pág. 1.

*BBVAPR*, 185 DPR 307, 337-338 (2012); *García v. Padró,* 165 DPR 324, 334 (2005). A diferencia de la apelación, el foro revisor tiene la facultad para expedir o denegar el recurso de *certiorari* de manera discrecional. *García v. Padró, supra.* Ahora, el ejercicio de la discreción no equivale a hacer abstracción del resto del Derecho, ya que ese proceder constituiría, en sí mismo, un abuso de discreción. *Negrón v. Srio. de Justicia,* 154 DPR 79, 91 (2001). Por lo tanto, el examen al auto discrecional que realizamos antes de decidir el curso a seguir no se da en el vacío ni en ausencia de otros parámetros. *800 Ponce de León v. AIG, supra*, pág. 176. Ello así, porque "el adecuado ejercicio de la discreción judicial está inexorable e indefectiblemente atado al concepto de la razonabilidad". *García v. Padró, supra*, pág. 335; *Pueblo v. Ortega Santiago*, 125 DPR 203, 211 (1990).

Es sabido que la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, delimita taxativamente las instancias en las cuales este foro intermedio tiene autoridad para atender los recursos de *certiorari.* En su parte pertinente, la norma dispone que, por excepción, este foro intermedio podrá revisar órdenes o resoluciones interlocutorias cuando se recurra de decisiones del tribunal primario en **casos de relaciones de familia**.

Además del examen objetivo antes descrito, para ejercer sabia y prudentemente nuestra facultad discrecional al determinar si expedimos o denegamos un recurso de *certiorari*, nos guiamos por la Regla 40 del Reglamento del Tribunal de Apelaciones, *Criterios para la expedición del auto de certiorari*, 4 LPRA Ap. XXII-B, R. 40.

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) **Si la situación de hechos planteada es la más indicada para el análisis del problema**.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) **Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración**.

(F) **Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio**.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. (Énfasis nuestro).

Claro está, es norma asentada que este tribunal intermedio no interviene con las determinaciones emitidas por el foro primario ni sustituye su criterio discrecional, "*salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad, incurrió en craso abuso con el ejercicio de la discreción, o que incurrió en error manifiesto*". (Cursivas en el original). *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018) y la jurisprudencia allí citada.

**B.**

El bienestar de los menores constituye parte integral de la política pública del Gobierno de Puerto Rico. *De León Ramos v. Navarro Acevedo*, 195 DPR 157, 169 (2016). El derecho de los menores a recibir alimentos va de la mano con el propio derecho a la vida consagrado en la Carta de Derechos de nuestra Constitución. *Id.*; Art. II, Sec. 7, Const. PR, LPRA, Tomo 1. **El deber de ambos progenitores de alimentar a los hijos es inherente a la filiación**. Art. 558(b) del Cód. Civil, 31 LPRA sec. 7104(b). En armonía, el Artículo 653 del Código Civil, 31 LPRA sec. 7531, dispone lo siguiente sobre la obligación alimentaria:

Se entiende por alimentos todo lo que es indispensable para el sustento, la vivienda, la vestimenta, la recreación y la asistencia médica de una persona, según la posición social de su familia.

Cuando el alimentista es menor de edad, los alimentos comprenden también su educación, las atenciones de previsión acomodadas a los usos y a las circunstancias de su entorno familiar y social y los gastos

extraordinarios para la atención de sus condiciones personales especiales.

En cuanto a la cuantía de los alimentos del menor de edad, el Artículo 666 del Código Civil, 31 LPRA sec. 7562, establece que "se fija siguiendo los criterios dispuestos en la ley especial complementaria". Claro está, la determinación de la pensión de alimentos debe velar por que la cuantía que se establezca cumpla con el **principio de proporcionalidad**. *Llorens Becerra v. Mora Monteserín,* 178 DPR 1003, 1016 (2010). Partiendo de este principio es que se han adoptado, por vía estatutaria y reglamentaria, parámetros más precisos para dirigir la ardua labor de determinar la capacidad económica con que cuentan los padres y las madres para suplir las necesidades de sus hijos. *Id.,* págs. 1016-1017.

Cónsono con lo anterior, la Ley Núm. 5 de 30 de diciembre de 1986, *Ley Orgánica de la Administración para el Sustento de Menores,* 8 LPRA sec. 501 *et seq.* (Ley 5), tiene como fin asegurar el cumplimiento de las obligaciones alimentarias de los padres y madres para con sus hijos menores de edad. *De León Ramos v. Navarro Acevedo, supra,* págs. 170-171. Por su parte, las *Guías mandatorias para fijar y modificar pensiones alimentarias en Puerto Rico,* Reglamento Núm. 9535 del 15 de febrero de 2024 (Reglamento 9535), establecen unos parámetros objetivos específicos que deben utilizarse en el proceso de **determinar el monto de las pensiones de una manera uniforme y equitativa tomando en consideración los ingresos de los progenitores y las necesidades de los hijos**. *De León Ramos v. Navarro Acevedo, supra,* pág. 171. De acuerdo con este ordenamiento, al determinar la cuantía de la pensión se evalúa tanto la situación económica de los alimentantes, como las necesidades particulares de los alimentistas. *Martínez v. Rodríguez,* 160 DPR 145, 154 (2003).

Como se conoce, "cuando un [progenitor] alimentante acepta que posee suficientes ingresos para pagar la pensión alimentaria que en derecho proceda a favor de sus hijos, promueve, con acierto, el interés público del bienestar de los menores y agiliza los procedimientos en cuanto a la otorgación de pensiones alimentarias". *Chévere v. Levis*, 150 DPR 525, 544 (2000). La aceptación de capacidad económica es una decisión voluntaria, mediante la cual **el alimentante se compromete a cubrir todas las necesidades que se establezcan como parte de una pensión alimentaria**. *De León Ramos v. Navarro Acevedo, supra,* pág. 176. En estos casos, se prescinde del trámite provisto en la Ley 5 y el Reglamento 9535, pues únicamente resta fijar el monto de la pensión en atención exclusivamente a las necesidades del menor. *Id.,* pág. 175.

Ahora, la aceptación acarrea consecuencias importantes para el alimentante. Primero, la información sobre el patrimonio de la persona que asume capacidad económica no es objeto de descubrimiento; y segundo, ésta queda impedida de posteriormente impugnar la pensión que se establezca, aduciendo que no cuenta con los recursos necesarios para ello. *De León Ramos v. Navarro Acevedo, supra,* pág. 174; *Santiago, Maisonet v. Maisonet Correa, supra,* pág. 565. Empero, aun bajo estas circunstancias, el alimentante que acepta capacidad económica puede impugnar la cuantía de la pensión porque resulte contraria a la prueba o porque sea irrazonable a la luz de las necesidades de los alimentistas. *Santiago, Maisonet v. Maisonet Correa, supra.*

Es sabido que, en materia de alimentos, las sentencias que los fijan no constituyen cosa juzgada, por lo que siempre estarán sujetas a revisión. *De León Ramos v. Navarro Acevedo, supra,* pág. 176. De ordinario, **la revisión se efectúa cada tres años, una vez fue originalmente fijada o modificada**. Sin embargo, la revisión

podría anticiparse, si cualquiera de las partes puede demostrar justa causa, debido a un cambio sustancial en las circunstancias de la persona custodia, de la persona no custodia o del menor alimentista. Arts. 2(38) y 19(c) de la Ley 5, 8 LPRA secs. 501(38) y 518(c). Es decir, se entiende que ha mediado *justa causa*, "cuando existan cambios sustanciales en las circunstancias del alimentista o del alimentante[,] tales como[:] la encarcelación de la persona no custodia, variaciones o cambios significativos o imprevistos en los ingresos, en la capacidad de generar ingresos, en los egresos, gastos o capital de la persona custodia o de la persona no custodia, o en los gastos, necesidades o circunstancias del menor". Art. 19(c) de la Ley 5, 8 LPRA sec. 518(c).

El Tribunal Supremo de Puerto Rico ha pautado que, en aquellas instancias en que un progenitor ha aceptado capacidad económica, éste no está impedido de retirarla cuando **han transcurrido tres años de fijada la pensión**. Si todavía no se ha cumplido dicho plazo, puede retractarse de la aceptación de capacidad económica, **si muestra justa causa**, según definida en la precitada disposición legal. *De León Ramos v. Navarro Acevedo*, *supra*, págs. 179-180. Como consecuencia del retiro de la aceptación de capacidad económica, el alimentante se allana a los rigores del trámite legal aplicable al proceso de establecer la pensión alimentaria, incluyendo el descubrimiento de prueba. *Id.*, pág. 180.

### III.

En la causa presente, el señor Hernández Rivera alega que el TPI incidió al no aceptar el retiro de la aceptación de capacidad económica, aun cuando no existe fijada una pensión final, ya que los procedimientos ante la EPA no han culminado. Impugna que el TPI no haya considerado las razones argüidas acerca de la ausencia de consentimiento informado que precedieron la aceptación y que conllevaron a la renuncia de la anterior representación legal.

De otro lado, la señora Garced Muñoz reitera con razón la deficiencia de documentos en el Apéndice del recurso. Sostiene que el señor Hernández Rivera no ha mostrado justa causa ni cambios sustanciales que justifiquen el retiro de la alegación de capacidad económica. Solicita, además, honorarios por temeridad.

Por su relación intrínseca, abordamos en conjunto los tres señalamientos de error. En esencia, debemos determinar si un progenitor que ha asumido capacidad económica puede retirar la alegación durante el transcurso de los procedimientos ante la EPA y antes de que se fije la pensión final por primera vez. Ello, porque la aceptación no obedeció a un consentimiento informado, toda vez que desconocía de todas sus implicaciones. Somos del criterio que, ante los hechos específicos de este caso, procede el retiro de capacidad económica. Veamos.

Según reseñamos, el señor Hernández Rivera no compareció a la vista de 10 de octubre de 2024, en la cual se fijó la pensión alimentaria provisional, ya que no recibió una notificación cierta de su solicitud de transferencia. En dicho cónclave, en su ausencia, se le imputó un ingreso de $10,000.00 y se computó una pensión provisional a favor de E.J.H.G., ascendente a $2,215.00 mensuales, además del 73% de los gastos escolares y el plan médico. Es decir, la pensión alimentaria provisional establecida se computó bajo las guías, no al palio de una alegación de capacidad económica.[29]

Luego, es indiscutible que el señor Hernández Rivera asumió capacidad económica, pero no a ciegas. Su intención era descubrir prueba para ejercer su derecho a cuestionar la cuantía de la pensión, en caso de que resultara irrazonable, en comparación con las necesidades reales de E.J.H.G. *Santiago, Maisonet v. Maisonet Correa, supra*, pág. 565.

---

[29] Refiérase, al Apéndice de la parte recurrida, págs. 49-52, *Minuta* de la vista de 4 de febrero de 2025.

En la vista de 10 de febrero de 2025, en esencia, se consideró la aceptación de capacidad económica del peticionario. La recurrida suministró prueba de los gastos del menor.[30] Sobre ciertos gastos no existía controversia; en otros, las partes presentaron sus contenciones. Se instó al diálogo. En general, la discusión se basó en la Planilla de Información Personal y Económica (PIPE) presentada por la recurrida el 8 de octubre de 2024.[31] A esa fecha, el documento no fue enmendado, aun cuando en la audiencia se plantearon gastos adicionales y reembolsos. Se estimó una suma, pero sujeta a qué parte prevalecía en sus respectivas alegaciones. Por último, se señaló una vista final.

Más tarde, el peticionario aseguró que no fue asesorado en cuanto a todas las consecuencias de aceptar la capacidad económica. Esta insuficiencia en la orientación llevó a que se suscitaran diferencias irreconciliables con la anterior representación legal, que produjeron la renuncia voluntaria de ésta.

Una vez evaluado puntillosamente el expediente del caso ante nos y el ordenamiento jurídico que gobierna la controversia, somos del criterio que las circunstancias particulares de los contendientes ameritan que se acepte el retiro de la aceptación de capacidad económica. Primero, nuestro sistema jurídico está diseñado para que la carga económica de los hijos la asuman ambos progenitores, bajo un **principio de proporcionalidad**. Ello asegura que todas las necesidades de E.J.H.G. queden satisfechas; entre otras: vivienda, alimentos, transportación, académicas, extracurriculares, de salud y esparcimiento. Nada impide que las partes ratifiquen la aceptación alcanzada de los gastos recurrentes del menor, sólo que éstos serían

---

[30] Véase, por ejemplo, Apéndice de la parte recurrida, págs. 68-133 y entrada 25 del SUMAC. Además, entradas 135-137; no obstante, el foro primario rechazó la admisión de la evidencia ofrecida por la recurrida el 10 de febrero de 2025; refiérase a las entradas 143-145 del SUMAC.
[31] Entrada 18 del SUMAC.

satisfechos por ambos progenitores de manera proporcional. Segundo, en este caso, **no existe una pensión final fijada**, por lo que ni siquiera ha comenzado a transcurrir el trienio establecido en ley para que se dé un proceso de revisión. Nótese que, incluso en un proceso de revisión luego de transcurridos tres años, el alimentante que alegó en su día capacidad económica puede retirar su alegación; si es antes, entonces, tendría que demostrar justa causa. *De León Ramos v. Navarro Acevedo, supra,* págs. 179-180. Tercero, para el establecimiento de la pensión provisional, **el peticionario ya fue evaluado provisionalmente a base de ingresos, no al amparo de una aceptación de capacidad económica**. Así, pues, sólo resta que someta evidencia de sus ingresos. Cuarto, aun cuando no es requerido necesariamente que muestre justa causa en esta etapa de los procedimientos, el peticionario indicó que **la alegación de capacidad económica estaba viciada por la falta de consentimiento informado al no conocer todas las consecuencias que acarreaba**, lo que a todas luces cumple con el estándar.

En suma, estimamos que la situación de hechos y la etapa de los procedimientos son apropiadas para expedir el auto discrecional del título e intervenir con las *Órdenes* impugnadas. Al respecto, opinamos que procede la reapertura del descubrimiento de prueba ante la EPA. Es sabido que la admisión de evidencia juega un papel fundamental en el proceso de establecer las pensiones alimentarias de los menores. El proceso de fijación requiere conocer la realidad económica del alimentante, así como la situación del alimentista. Por ello, una vez acogemos el retiro oportuno de la alegación de capacidad económica del señor Hernández Rivera, se impone su obligación de proveer su información personal y económica a través de la PIPE.

**IV.**

Por los fundamentos expuestos, acordamos expedir el auto discrecional de *certiorari* y revocar los dictámenes interlocutorios impugnados. Se acepta el retiro de la alegación de capacidad económica. En consecuencia, devolvemos el caso del epígrafe ante la consideración del Tribunal de Primera Instancia, para la continuación de los procedimientos atinentes a la reapertura del descubrimiento de prueba, en atención a la fijación de la pensión alimentaria final del menor E.J.H.G., que se deberá computar a base del ordenamiento legal y reglamentario aplicables.

Dejamos sin efecto la paralización decretada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


                            Lcda.  Lilia M. Oquendo Solís
                          Secretaria del Tribunal de Apelaciones